IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALFRED DEWAYNE BROWN, § | |
| Plaintiff § | |
| § | |
| § | |
| VS. § | CIVIL ACTION NO. |
| § | 4:17-CV-01749 |
| § | |
| CITY OF HOUSTON, TEXAS; § | |
| HARRIS COUNTY, TEXAS; § | |
| BRECK MCDANIEL; § | |
| DANIEL J. RIZZO; § | |
| KIM OGG; TED C. BLOYD; § | |
| AND D.L. ROBERTSON, § | |
| Defendants § | |

## DEFENDANT RIZZO'S MOTION TO DISMISS

Defendant Daniel J. Rizzo files this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and by way of proof, will show the Court the following:

## BACKGROUND

Plaintiff Alfred Dewayne Brown asserts various civil rights causes of action against several defendants, including Defendant Rizzo. 42 U.S.C. § 1983. Plaintiff Brown alleges he was wrongly convicted, and thus, his civil rights violated. Brown bases his claims on allegations of misconduct by Defendant Rizzo, the City of Houston, Harris County, District Attorney Kim Ogg and several Houston police officers. Defendant Rizzo faces Count 1 (violation of the 14th Amendment due

1

process and fair trial rights); Count 2 (violation of the 14th Amendment based on allegations of failure to turn over exculpatory and impeachment evidence).

Both counts should be dismissed. Defendant Rizzo has an absolute right to immunity from lawsuit as a then-Harris County Assistant District Attorney. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Additionally, Plaintiff has joined the wrong party; the State of Texas, as shown below, not the County, is responsible for district attorneys and district attorney offices. Also, Plaintiff has failed to state a claim upon which relief can be granted. Finally, the statute of limitations is gone, as shown in the complaint itself.

## ANALYSIS

A motion to dismiss is a proper vehicle to assert a claim of absolute immunity and statute of limitations defenses. *See Imbler,* 424 U.S. at 416; *Mowbray v. Cameron County,* 274 F.3d 269, 276, 279 (5th Cir.2001) (prosecutorial immunity and witness immunity); see also, *Wilson v. Barcella*, 2007 WL 963977, at *9 (S.D. Tex. Mar. 29, 2007), *aff'd,* 284 F. App'x 210 (5th Cir. 2008); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008), *citing Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136-37 (9th Cir. 1993). It is also a proper vehicle to assert improper party.

The Fifth Circuit reviews a Rule 12(b)(6) dismissal *de novo*. *Castro v. Collecto, Inc.,* 634 F.3d 779, 783 (5th Cir.2011). In reviewing such a dismissal, the

Court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir.2008); *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014); *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## DEFENDANT RIZZO HAS ABSOLUTE IMMUNITY

The Supreme Court has long held that a prosecutor is entitled to absolute immunity from liability for violating a person's federal constitutional rights when he engages in activities "intimately associated with the judicial phase of the criminal process*." Imbler*, 424 U.S. at 430; *see also*, *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler*). Thus, Plaintiff Brown's claims against Defendant Rizzo are barred by absolute immunity. *Van de Kamp,* 555 U.S. at 349.

Such prosecutorial immunity protects a prosecutor even when he acts in bad faith or with ulterior motives, as long as he acts within the scope of the District Attorney's prosecutorial functions. *Clawson v. Wharton County*, 941 S.W.2d 267,

272 (Tex.App.–Corpus Christi 1996).  In fact, the Fifth Circuit has specifically held that suppression of exculpatory evidence … "is shielded by absolute immunity." *Truvia v. Julien*, 187 F. App'x. 346, 348 (5th Cir. 2006) (*per curiam*) (citing *Cousin v. Small*, 325 F.3d 627, 635 & n.11 (5th Cir. 2003)); *see also, Estrada v. Healey*, 2015 WL 13158515, at *5 (S.D. Tex. 2015), *aff'd,* 647 F. App'x 335 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 226, 196 L. Ed. 2d 174 (2016).

The scope of absolute prosecutorial immunity is broad. *Groom v. Fickes*, 966 F. Supp. 1466, 1472 (S.D. Tex. 1997). It "is not limited 'only to ... conduct occurring in the courtroom,' " but encompasses all activities " 'intimately associated with the judicial phase of the criminal process.' " *Cousin,* 325 F.3d at 631-32 (quoting *Burns,* 500 U.S. at 486*,* and *Buckley,* 509 U.S. at 272*); see also Imbler,* 424 U.S. at 431 n.33 ("We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."). Absolute immunity therefore applies not only to prosecutorial activity that occurs in preparation for and during trial, but also to conduct that occurs "long after" a conviction has been obtained, including at the appellate level. *See Reid v. New Hampshire,* 56 F.3d 332, 338 (1st Cir. 1995) ("Nor was absolute immunity forfeited because the prosecutors continued to withhold the exculpatory evidence long after Reid's conviction."); *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir. 1979) (rejecting the argument that immunity should not extend to

prosecutor's conduct in handling appeals because "[f]ear of civil liability could hinder a prosecutor's judgment in conducting a case at the appellate level as well as the trial level").

The type of prosecutorial conduct to which absolute immunity applies includes, for example, decisions as to which witnesses to call and what evidence to present, *see, e.g., Mowbray v. Cameron County,* 274 F.3d 269, 277 (5th Cir. 2001); the use of allegedly perjured testimony, *see, e.g., Imbler,* 424 U.S. at 416*; Henzel,* 608 F.2d at 657*; Bruce v. Wade,* 537 F.2d 850, 852 (5th Cir. 1976)(involving use of false affidavit); the alleged suppression of even "significant" exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), *see, e.g., Cousin,* 325 F.3d at 635-36*; Henzel v. Gerstein,* 608 F.2d 654, 657 (1979)*;* and an alleged conspiracy with a judge and a court-appointed defense lawyer to deny a criminal defendant adequate representation, *see Mills v. Criminal Dist. Court. No. 3,* 837 F.2d 677, 678 (5th Cir. 1988).

Federal as well as state prosecutors are shielded from civil claims by absolute immunity. *See, e.g., Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 433 n. 5 (1993) ("For purposes of immunity, we have not distinguished actions brought under 42 U.S.C. § 1983 against state officials from *Bivens* actions brought against federal officials."). Absolute immunity also protects supervisory prosecutors who oversee the line prosecutors actually appearing in court. *See, e.g., Genzler v. Longanbach,*

410 F.3d 630, 644 (9th Cir.), cert. denied, 546 U.S.1031 (2005) (dismissing claims against supervisory prosecutors on absolute immunity grounds); *Rykers v. Alford, 832 F.2d 895, 896-97 (5th Cir. 1987)* (dismissing claims against U.S. Attorney and Assistant U.S. Attorneys under absolute immunity). It applies to claims that the prosecutor's conduct was part of a conspiracy. *See, e.g., Mills,* 837 F.2d at 678; *Groom,* 966 F. Supp. at 1477-78 ("When the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy.") (internal quotation omitted). And it applies even when the prosecutor's conduct is alleged to be egregious, malicious or intentional. *See Cousin,* 325 F.3d at 635; *see also Brandley v. Keeshan,* 64 F.3d 196, 200-02 (5th Cir. 1995) (noting absolute immunity admits of no "malice" exception); *Groom*, 966 F. Supp. at 1472 ("Absolute immunity shelters prosecutors from liability even when they act maliciously, wantonly or negligently.") (internal quotation omitted). Indeed, as the Fifth Circuit underscored in *Cousin,* "[w]ilful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors remain absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function." *Cousin,* 325 F.3d at 635. Accordingly, absolute immunity applies "[e]ven where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts." *Henzel, 608 F.2d at 657* (internal quotation omitted).

"The broad application of absolute immunity [that] shields a prosecutor from any liability arising from his conduct as an advocate" reflects the important policy considerations underlying the doctrine. *Groom, 966 F. Supp. at 1472*. As the United States Supreme Court, the Fifth Circuit and other courts repeatedly have underscored, "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler, 424 U.S. at 424-25; see, e.g., Cousin, 325 F.3d at 635* ("Absent immunity, the specter of litigation could undermine prosecutors' ability to exercise their independent judgment with respect to the initiation and conduct of criminal proceedings."). Courts therefore have recognized that the importance of preserving the integrity of the prosecutor's office and the justice system "justifies [the] regrettable but necessary cost" of barring even potentially meritorious civil rights claims. *Cousin, 325 F.3d at 635-36.* As the Supreme Court stated in *Imbler,*

Also, Plaintiff Brown does not allege that Defendant Rizzo's acts were <u>not</u> prosecutorial in nature, and therefore, <u>not</u> shielded by immunity. *Imbler*, 424 U.S. at 430–31; *see also Boyd,* 31 F.3d 279, 284–85 (1984). In the case of *Mackey v. Helfrich*, 442 F. App'x 948, 950 (5th Cir. 2011), the Court ruled that the district court did not err in determining the prosecutor had absolute immunity.

7

## STATE NOT HARRIS COUNTY IS PROPER PARTY

Harris County ultimately is entitled to dismissal as a party because those actions of which Plaintiff Brown complains were part of the District Attorney's criminal prosecution and thus were <u>state actions</u>, not those of Harris County. *Brown v. United States Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1254 (S.D. Tex. 2016);

Further, in Texas, "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is <u>an agent of the state, not of the county</u> in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997)(*emphasis added*); *see also*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). Similarly, in Texas, claims for failure to train prosecutors on *Brady* duties are deemed claims against the State, not the County. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 278 (5th Cir. 2001) ("Because [the prosecutors] are state officers, the county cannot be liable for a failure to train them [on *Brady* duties]."). *See also*, *Estrada v. Healey*, 2015 WL 13158515, at *6 (S.D. Tex. 2015), *aff'd*, 647 F. App'x 335 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 226, 196 L. Ed. 2d 174 (2016).

Currently, the State of Texas is not a party to this lawsuit. Regardless, the County cannot be held responsible for any custom and practice allegations against the DA, a state actor. *See generally*, Plaintiff's Complaint, Count 4, pp. 44-53.

Plaintiff's official capacity claims thus are construed as claims against the State of Texas. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."); see also, *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997)("Texas law makes clear, however, that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted.")

Recently, Judge Rosenthal held: "Harris County's motion to dismiss is granted because, as a matter of law, Texas counties are not liable for a district attorney's actions carried out in the course of enforcing state law." *Bellamy v. Harris Cty., Texas*, No. CV H-16-02925, 2017 WL 2080157, at *3 (S.D. Tex. May 15, 2017).

Similarly, in Texas, claims for failure to train prosecutors on *Brady* duties are deemed claims against the State, not the County. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 278 (5th Cir. 2001) ("Because [the prosecutors] are state officers, the county cannot be liable for a failure to train them [on *Brady* duties]."); *Estrada*, 2015 WL 13158515, at *6. *See also, Arizonans for Official English*, 520 U.S. 43, 69 & 69 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

*Gatheright v. Barbour*, 2017 WL 507603, at *5 (N.D. Miss. Feb. 6, 2017) (waiver does not apply as an exception on Plaintiff's Section 1983 claims against defendants).

Accordingly, Plaintiff's official capacity claims for money damages based on then-ADA Rizzo's conduct (and the DA) are construed as claims against the State of Texas, and thus fail to state a claim for monetary damages on which relief can be granted by the county. *Estrada*, 2015 WL 13158515, at *6. Plaintiff cannot sue Defendant Rizzo because of absolute immunity, and in fact, cannot sue Harris County because it is not the State.

### PLAINTIFF BROWN'S STATUTE OF LIMITATIONS HAS EXPIRED

Plaintiff Brown sets out the relevant dates in his complaint (See Complaint, page 7-8, ¶¶ 26 and 27, Docket Entry 1). Plaintiff filed this lawsuit two years to the day that the local district court dismissed his case, on June 8, 2015. However, the operative event that triggered the statute of limitations occurred in 2014. On November 5, 2014, the Texas Court of Criminal Appeals vacated Plaintiff Brown's conviction and sentence, and remanded the case to the trial court "for a new trial or other proceeding consistent with this opinion."

To begin, the statute of limitations is two years. It is undisputed that the applicable statute of limitations for § 1983 claims is the state's general personal injury limitations period, which in Texas, is two years. *See Wallace v. Kato,* 549

U.S. 384, 387 (2007)("[T]he length of the statute of limitations" for § 1983 claims "is that which the State provides for personal-injury torts."); Tex. Civ. Prac. & Rem.Code § 16.003(a). *See also*, *Schaefer v. Gulf Coast Regional Blood Ctr.,* 10 F.3d 327, 331 (5th Cir. 1994).

Brown was aware of his allegations of prosecutorial misconduct with respect to the criminal trial against him at least in 2014, when the Texas Court of Criminal Appeals <u>vacated his sentence</u>, and remanded the case to the district court. With the *Heck* tolling bar lifted in 2014, Brown's statute began to tick. He clearly had knowledge of his potential claims. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

When the applicable statute of limitations is borrowed from the state, that state's tolling provisions are the "primary guide" for the courts. *FDIC v. Dawson,* 4 F.3d 1303, 1312 (5th Cir.), *cert. denied*, 512 U.S. 1205 (1994). Under Texas law, "where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992)(citing *Weisz v. Spindletop Oil and Gas Co.,* 664 S.W.2d 423, 425 (Tex.App.-Corpus Christi 1983, no writ)). *See also, Piotrowski v. City of Houston*, 237 F.3d 567, 577 (5th Cir. 2001).

The Supreme Court holds that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

In *Wilson v. Barcella*, 2007 WL 963977, at *12-13 (S.D. Tex. Mar. 29, 2007), *aff'd,* 284 F. App'x 210 (5th Cir. 2008), the Southern District of Texas held the "*Heck* bar is not lifted when the plaintiff is no longer incarcerated," rather, the bar is lifted when the underlying conviction is invalidated. That can occur before—or after—release from prison. In this case, Brown's sentence was vacated seven months before his release.

Thus, Brown has not alleged any basis to toll the statute of limitations beyond November 5, 2014. "[E]quitable tolling applies only in rare and exceptional circumstances." *George v. Harris Cty., Tex.*, No. CIV.A. H-10-3235, 2012 WL 2744332, at *11 (S.D. Tex. July 9, 2012), quoting *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir.2010). Plaintiff bears the burden of proving the right to equitable tolling and must show he "has actively pursued his judicial remedies by filing a defective pleading during the statutory period" or has been "induced or

tricked by his adversary's misconduct into allowing the filing deadline to pass." *George*, 2012 WL 2744332, at * 11, quoting *Harris*, 628 F.3d at 229. Incarceration is not a ground for tolling the statute of limitations. Even mental illness will not toll the statute of limitations unless plaintiff can show his mental illness actually prevented him from complying with his deadline. *George*, 2012 WL 274432, at *12.

Brown's conviction and sentence were vacated November 5, 2014. He had until November 5, 2016 to file the instant case. He missed that deadline.

In *Wilson*, the court wrote:

The *Heck* bar does not apply, but the statute of limitations does.

Wilson's own filings show that he was aware of the alleged prosecutorial misconduct in the District of Columbia trial in 1983. Quintero testified and rebutted the allegedly false affidavit Barcella introduced into evidence. Barcella argues that the three-year District of Columbia statute of limitations for personal injury, D.C. Code § 12–301, applies to this claim and that it began to run when the District of Columbia trial ended. (Docket Entry No. 65 at 16–17). Wilson does not dispute that the three-year limitations applies; instead, he argues that his claim accrued from the date the Houston federal district court overturned the Southern District of Texas conviction. (Docket Entry No. 77 at 59–60).

In *Wallace,* the Supreme Court stated:

> [T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has not been ... **invalidated,** that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn.

13

> *Wallace v. Kato,* 549 U.S. 384, 387 (2007) (internal quotation marks omitted). Wilson was acquitted of the criminal charges against him in the District of Columbia. There is no "outstanding criminal judgment" or "extant conviction" to allow deferred accrual under *Heck*. <u>The Houston court's decision to overturn the Houston conviction did not delay the beginning of, or restart the running of, the limitations period on the *Bivens* claim relating to alleged prosecutorial misconduct period in the District of Columbia case. Wilson's pleadings in this *Bivens* case make it clear that he knew of the false affidavit during the 1983 trial.</u> Wilson's claims relating to the District of Columbia trial are barred by the three-year statute of limitations.

*Wilson,* 2007 WL 963977, at \*12–13 (*emphasis added*).

By analogy, Brown knew he had a cause of action when the Texas Court of Criminal Appeals vacated his conviction. *Ex parte Brown*, 2014 WL 5745499, at \*1 (Tex. Crim. App. Nov. 5, 2014). In this *habeas* action, the court notes the State conceded the *Brady* violation.

In that *Brown* opinion, the state high court ruled:

> Applicant presents numerous allegations in his application in which he challenges the validity of his conviction and resulting sentence. In allegation V.D.3., applicant claims that the State withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). **The State conceded that material exculpatory evidence was withheld from applicant. The habeas court adopted the parties' agreed findings of fact and conclusions of law and recommended that this Court grant relief.**

> This Court has reviewed the record with respect to the *Brady* allegation made by applicant. Based on the habeas court's findings and conclusions and our own review, we hold that the State withheld evidence that was both favorable and material to applicant's case in violation of *Brady. See also Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Therefore, relief is granted. We dismiss as moot applicant's remaining challenges to his conviction and sentence.

14

> **We vacate applicant's conviction and sentence**, and remand the case to the trial court for a new trial or other proceeding consistent with this opinion.
> (*emphasis added*).

Thus, the lower court's dismissal of the underlying case was not the event that removed the *Heck* tolling provision. The criminal court of appeals did.

The statute ran on November 5, 2016. The entire complaint should be dismissed.

## BROWN HAS NOT PLED SUFFICIENCT FACTS TO STATE A CLAIM

Even if Defendant Rizzo was an agent for Harris County, and even if Brown had filed suit within the statute of limitations, Brown's case against Harris County would have still required dismissal because Brown failed to plead sufficient facts to state a claim under 42 U.S.C. § 1983.

Unlike Texas, other states vest local governments with responsibility for the district attorney,[1] but even in those states, there is no § 1983 liability for *Brady* violations unless the local government's chief policymaker is aware of a pattern of similar *Brady* violations, is indifferent to the need to train prosecutors to avoid them, and this lack of training actually caused plaintiff's damages. *Connick v. Thompson*, 563 U.S. 51 at 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

---

[1] Under the Louisiana Constitution, for example, a district attorney's office is an "independent local entity." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999)(emphasis added). That is very different from Texas's system, where the district attorney is an agent of the State.

In *Connick v. Thompson*, an Orleans Parish, Louisiana assistant district attorney concealed a lab report that proved John Thompson was not guilty of armed robbery. Without that evidence, Thompson was convicted of armed robbery and then later charged with murder in another case. Because of his armed robbery conviction, Thomas chose not to testify at his murder trial and was convicted of that as well. A month before he was scheduled to be executed, a private investigator discovered the lab report and established Thompson's innocence in the robbery case. Thompson's murder sentence was also vacated, and he was retried and found not guilty. He sued the district attorney's office after being incarcerated 18 years.

Thompson, like Brown, alleged the district attorney's office was deliberately indifferent to an obvious need to train prosecutors to avoid Constitutional violations. Thompson proved that in the 10 years prior to his conviction, the Orleans Parish District Attorney's Office (which is significantly smaller than Harris County's) had four conviction reversals due to *Brady* violations. Despite this, the Fifth Circuit held those "four reversals could not have put [District Attorney] Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here" because the four earlier violations did not specifically involve blood evidence or a crime lab report. *Id.*, 563 U.S. at 62-63.

Brown's lengthy complaint never points to any *Brady* violation involving phone records—much less a pattern of such violations prior to his conviction in

16

2003. Brown vaguely discussed only <u>five</u> cases of alleged *Brady* violations in the history of the nation's third largest district attorney's office.[2] Though his Complaint did not identify when each of these exonerations occurred, they all appear to have been well after 2003.

Any alleged pattern of *Brady* violations since Brown's conviction is irrelevant—the operative question in a Section 1983 case is what knowledge the chief policy maker had ***prior to*** the alleged Constitutional violation. *Id.*, 563 U.S. at 63. A policy maker could not have been placed on notice in 2003 about an exoneration that occurred a decade later. Brown has not even pled the elements necessary for a § 1983 case.

Further, contrary to Brown's assertions, there is no requirement that district attorneys formally train lawyers in their offices. District attorneys can rely on the fact that their lawyers graduated from law school, passed a bar exam, passed a character and fitness exam, and comply with their continuing education requirements. As the Fifth Circuit explained:

> We do not assume that prosecutors will always make correct Brady decisions or that guidance regarding specific Brady questions would not assist prosecutors. But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.

---

[2] These five cases are discussed on pages 48-52 of plaintiff's Complaint. They are: *Ex Parte David Mark Temple, Ex Parte Linda Carty, Ex Parte Edward McGregor, Ex Parte Kenneth Headley,* and *State v. Glen Kahlden*.

*Connick v. Thompson*, 563 U.S. 51, 68 (2011).

Not only are Brown's allegations unhelpful to his case, but they contradict his assertions. For example, Brown complains that Harris County ***juries*** lead the nation in death sentences.[3]  Harris County does not control the decisions of juries.  If fact, the purpose of a jury trial is to enact the will of the ***people***—not the government.  It is not surprising that Harris County would have a large number of death sentences, since it is the third largest county in the United States and is located in a conservative state, where both the laws and citizenry broadly support the death penalty.[4]  Further, having a significant number of exonerations does not establish the County's chief policy maker was aware of a pattern of withholding exculpatory evidence.  At most, it suggests that Texas courts are willing to re-open cases when new evidence comes to light.

While the Court should dismiss Brown's case against Harris County before reaching the details of his claims, it is worth noting that Brown failed to plead a

---

[3]  Complaint, Doc. 1, at 8.

[4]  Los Angeles County, California is the largest county in the United States.  California has only executed **13** people since 1972, and has had no executions since 2006.  Cook County, Illinois is the second largest county in the United States.  Illinois has only executed **12** people since 1974 and no one since 1999.  In 2000, Illinois Governor George Ryan issued a moratorium on executions.  In 2003, he commuted every death sentence in the state.  In 2011, Illinois formally abolished the death penalty. Texas has had no such moratorium, and it has executed **543** people since 1976.  Harris County is the third largest county in the country and the largest in Texas.  It is not surprising or unexpected for Harris County to have a large number of death sentences.

cause of action against Harris County under § 1983. On this alternative ground, his case should be dismissed.

## CONCLUSION

Defendant Rizzo has absolute immunity under Supreme Court precedent based on the allegations in Count 1 and 2. Further, the County is not the proper party here; the State of Texas is. Also, the statute of limitations is gone. The complaint was filed too late. Finally, Plaintiff fails to state a cause of action under 42 U.S. § 1983. The complaint should be dismissed.

Respectfully submitted,

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

*/S/ Suzanne Bradley*
**SUZANNE BRADLEY**
Assistant County Attorney
Federal ID No. 24567
State Bar No. 00793375
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5330
Facsimile: (713) 755-8924
suzanne.bradley@cao.hctx.net

ATTORNEY FOR DEFENDANT
DANIEL J. RIZZO

## CERTIFICATE OF SERVICE

      I hereby certify that on this September 5, 2017, a true and correct copy of this pleading was delivered via CM/ECF system:

Gwen E. Richard
LeClairRyan
1233 West Loop South
Suite 1000
Houston, TX 77027
(713) 654-1111
(713) 650-0027
Email: gwen.richard@leclairryan.com

                              */S/ Suzanne Bradley*
                              Suzanne Bradley
                              Assistant County Attorney