**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **ALFRED DEWAYNE BROWN,** | |
| *Plaintiff* | |
| **Vs.** | **CIVIL ACTION NO. 4:17-CV-01749** |
| **CITY OF HOUSTON, TEXAS;** | |
| **HARRIS COUNTY, TEXAS;** | **JURY DEMANDED** |
| **BRECK McDANIEL;** | |
| **DANIEL J. RIZZO;** | |
| **KIM OGG; TED C. BLOYD; and** | |
| **D.L. ROBERTSON,** | |
| *Defendants* | |

**DEFENDANT HARRIS COUNTY AND KIM OGG'S (IN HER OFFICIAL CAPACITY)**
**MOTION FOR RECONSIDERATION AND FRCP RULE 12(b)(1) MOTION TO**
**DISMISS**

Defendants Harris County and Kim Ogg, in her official capacity[1] (collectively, "Harris County"), file this motion for reconsideration of its FRCP 12(b)(6) motion to dismiss, and urge an FRCP 12(b)(1) motion to dismiss, respectfully shows the Court the following:

**I.**
**INTRODUCTION: NATURE AND STAGE OF PROCEEDINGS**

1. On December 26, 2017, this Court dismissed two of Plaintiff's three claims against Harris County.[2]  The remaining claim is that Harris County is liable for allegedly unconstitutional policies, practices, or customs enacted by former District Attorneys Charles

---

[1] A suit against an official in his or her "official capacity" is essentially a suit against the government. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55.  *See also, Kentucky v. Graham,* 473 U.S. 159, 165 (1985).

[2] One of the dismissed claims rests upon a finding of whether former Assistant District Attorney Daniel Rizzo is entitled to immunity. This was dismissed without prejudice and with leave to amend by March 29, 2018 (Doc. 39 at 31 & 43).

Rosenthal and Mike Anderson. Harris County respectfully asks the Court to reconsider its decision on this claim and grant Harris County's Motion to Dismiss for three reasons: (1) Harris County cannot be liable for the prosecutorial decisions of an independently elected district attorney or assistant district attorneys, (2) Harris County is the wrong party to this suit, and (3) Plaintiff does not have standing to sue Harris County for the actions of a district attorney acting in his or her prosecutorial capacity.

## II.
## ARGUMENT

**A. Federal Rule of Civil Procedure 54(b) allows this Court to reconsider its interlocutory order denying Harris County's FRCP 12(b)(6) motion to dismiss Plaintiff's final claim against it.**

2.    A motion to reconsider an interlocutory order is analyzed under the standards of Fed. R. Civ. P. Rule 54(b).[3] Fed. R. Civ. P. Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

3.    This Court's December 26, 2017 order did not dispose of all claims against all parties. The order was an interlocutory order and not a final judgment. This Court has the power under Rule 54(b) to reconsider and revise its ruling on the remaining claim against Harris County.

---

[3] *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017).

**B.   Under this Court's precedent, Harris County cannot be liable for the prosecutorial customs, policies, or practices of an independently elected district attorney.**

4.     On May 15, 2017, this Court held, as a matter of law, Harris County is not liable for the District Attorney's acts while engaging in the prosecution of criminal cases. In *Bellamy v. Harris County*, plaintiffs alleged that police officers falsely arrested them for possessing drugs and drug paraphernalia, and the District Attorney's Office pressured them into a conviction based on evidence that was either destroyed or never existed.[4]

5.     The Bellamys asserted this was not just the act of isolated prosecutors, but that the District Attorney's office "engaged in a wide-spread custom or practice of knowingly destroying evidence and not providing that information to those accused of crimes, and then leveraging guilty pleas and convictions" based on that evidence.[5]

6.     This Court dismissed the claims against both the District Attorney and Harris County because they can only be liable for administrative—not prosecutorial—acts:

> The Bellamys' attempt in their responsive brief to cast the complaint as relating to an "administrative" action by District Attorney Anderson, (Docket Entry No. 19 at 3–6), does not salvage the claim. The complaint alleges that District Attorney Anderson herself was the one who took various improper actions. There is only a brief and nonspecific allegation that "Harris County engaged in a wide-spread custom or practice" of various rights violations and that District Attorney Anderson implemented the policy. (Docket Entry No. 8 at ¶ 9).[6]

---

[4]     *Bellamy v. Harris County, Texas*, CV H-16-02925, 2017 WL 2080157 (S.D. Tex. May 15, 2017) (Rosenthal, J.).

[5]     *Id.*, 2017 WL 2080157, at *1 (emphasis added).

[6]     *Id.*, 2017 WL 2080157, at *2.

7.     This Court rejected all arguments that the alleged policies were enacted in an administrative capacity and recognized that the United States Supreme Court bars such claims against district attorneys in their supervisory or policymaking roles:

> Even assuming that that is sufficient to state a claim against District Attorney Anderson as a supervisor or policymaker, the Supreme Court has anticipated and rejected similar claims, holding that absolute immunity protects a prosecutor's performance of supervisory or administrative duties that are intimately related to core prosecutorial functions, such as supervision, policymaking, and training on *Brady* obligations. *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

> The Court made it clear in *Van de Kamp* that the sort of administrative duties that fall outside of the scope of absolute immunity are more in the line of "workplace hiring, payroll administration, the maintenance of physical facilities, and the like." *Id.* Those are not the kind of "administrative" duties that the Bellamys allege here. Instead, they allege administrative actions like those in *Van de Kamp*, which related to a prosecution office's training, supervision, policies, and information-management systems on *Brady* material. There, as here, the alleged actions all required "legal knowledge and the exercise of related discretion," putting them within the protection of absolute immunity. *Id.* at 344.

> This case runs headlong into the problem that the *Van de Kamp* court sought to avoid: if District Attorney Anderson had individually committed each of the wrongs that the complaint alleges, she would be absolutely immune. <u>Refusing to recognize that immunity based on allegations that the same actions were done by the same person in the same office, but in a supervisory or policymaking role, would "eviscerate" the immunity doctrine.</u> *Id.* at 347.[7]

8.     In *Bellamy*, this Court also granted Harris County's Motion to Dismiss because Harris County cannot be liable for the actions and policies of the Harris County District Attorney when she was enforcing State penal law:

> **Harris County's motion to dismiss is granted because, as a matter of law, Texas counties are not liable for a district attorney's actions carried out in the course of enforcing state law.** "Texas law makes clear ... that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir.

---

[7]      *Id.*, 2017 WL 2080157, at *2–3 (emphasis added).

1997). The result is that "the actions of a Texas district attorney within the scope of [her] prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable." *Id.*; *see also George v. Harris Cty., Tex.*, No. CIV.A. H–10–3235, 2012 WL 2744332, at *16 (S.D. Tex. July 9, 2012) ("Consequently, the Fifth Circuit said, counties cannot be held liable for the actions of a district attorney engaged in a criminal prosecution." (quoting *Davis v. TDCJ*, Civ. A. No. 5:08–cv–166, 2009 WL 2601443, at *6 (E.D.Tex. Aug.20, 2009)). **All of the Bellamys' allegations stem from the District Attorney's office's treatment of Mr. Bellamy, actions that occurred in the course of the office's performance of state law-enforcement duties. Taking the alleged facts as true, as a matter of law, the Bellamys have failed to state a claim on which relief can be granted against Harris County**."[8]

9.      In the *Brown* case at bar, this Court reached the opposite result than it did in *Bellamy* only seven months earlier.  Both Brown and Bellamy asserted that the District Attorney's office misled witnesses and withheld evidence in an effort to secure a conviction.[9] In both cases, the Court recognized that a county is not liable for a district attorney's acts, except in limited circumstances when "a district attorney exceeds the scope of his prosecutorial duties…".[10] The Court further recognized that a district attorney can only exceed the scope of his prosecutorial duties if she acts in a manner that is "administrative or managerial in nature" or acts as a final policymaker, instead of as a prosecutor.[11]

10.     However, the outcome of the two cases is incongruous. In *Brown*, the Court then held that Harris County *can* be liable for the policies, customs, and practices of the Harris County District Attorney and her assistant district attorneys for acts related to their prosecutorial function:

---

[8]     *Id.* at *3 (emphasis added).

[9]     *Id.*; Docket Entry No. 39 at pp. 3-5.

[10]    Docket Entry No. 39 at p. 21 (quoting *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1990)).

[11]    *Id.*, at p. 21, quoting *Estrada v. Healey,* No. H-15-0092, 2015 WL 13158514, at *10 (S.D. Tex. June 4, 2015) (Atlas, J.).

Brown alleges (1) a policy or custom and practice to inadequately train and supervise Assistant District Attorneys in *Brady* obligations, and (2) a "whatever it takes" policy or custom and practice that encouraged Assistant District Attorneys "to aggressively pursue convictions regardless of the weight of the evidence against a particular defendant; to secure favorable witness testimony at any cost, including unlawful means of pressure and intimidation; [and] to unethically solicit false testimony from witnesses." (Docket Entry No. 1 at 45). Brown argues that he sufficiently alleges a "conviction culture and 'do whatever it takes' policy that encouraged Assistant District Attorneys to ignore constitutional protections if it meant securing a conviction." (Docket Entry No. 22 at 28).

Brown bases his claim of Harris County's deliberate indifference on an alleged pattern of similar violations. *See, e.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Brown also alleges that Harris County ratified Rizzo's unconstitutional conduct, making it subject to liability under *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988). Harris County does not dispute that this legal theory of liability exists, but rather challenges the adequacy of Brown's allegations that the County had notice of prior, similar constitutional violations.[12] Harris County argues that while Brown generally alleges a certain "culture" at the Harris County District Attorney's Office and gives some examples, he fails to "connect the dots" to allege Harris County's knowledge of, and deliberate indifference to, resulting constitutional violations.

. . .

Brown has sufficiently alleged the three requirements for a § 1983 municipal-liability claim. He has identified the relevant policymakers—Charles Rosenthal, Jr., the District Attorney from 2001–2008, and Mike Anderson, the District Attorney immediately before Kim Ogg. He has identified the relevant policy or custom and practice—the "do whatever it takes" conviction culture. He has alleged the "moving force" behind his unconstitutional conviction and injury—the policy or custom and practice of obtaining convictions at all costs.[13]

11.   Brown's allegations against Harris County all stem from the Harris County

District Attorney and/or assistant district attorneys acting in their prosecutorial functions. As the

---

[12]   This Court noted in its decision that "Harris County does not dispute that this legal theory of liability exists." Docket Entry No. 39 at p. 23.  Counsel for Harris County respectfully clarifies that Harris County *does* dispute that plaintiff's legal theory of liability exists and did so in its original motion to dismiss. Docket Entry No. 9 at p. 5, paragraphs 12-14 (citing *Bellamy,* 2017 WL 2080157 at *3; *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997); *Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269, 278 (5th Cir. 2001)). Counsel for Harris County also presented alternative arguments and now apologizes if this point was not clear.

[13]   Docket Entry No. 39 at pp. 21-24.

Court states, Brown alleged only two bases for Harris County's liability: (1) failure to train prosecutors about their *Brady* obligations, (2) a "whatever it takes" policy, custom, or practice to encourage prosecutors to aggressively pursue convictions, secure favorable witness testimony through unlawful pressure and intimidation, and solicit false testimony.

12.     The Court dismissed Brown's first basis and held that he could not state a claim for failure to train.[14]

13.     Brown's second basis—that Harris County encouraged a "'whatever it takes' policy, custom, or practice that encouraged assistant district attorneys to aggressively pursue convictions, secure favorable witness testimony through unlawful pressure and intimidation, and solicit false testimony—directly implicates a prosecutorial function. How aggressively or not aggressively to _prosecute_ cases can only be decided by a _prosecutor_—not an administrator, and prosecutorial customs, policies, and practices are soundly within the discretion of the elected district attorney. Harris County is responsible only for administrative tasks, such as providing offices and supplies. It cannot enforce State penal law.

14.     Brown's allegation that prosecutors were encouraged "to secure favorable witness testimony at any cost, including unlawful means of pressure and intimidation" and "to unethically solicit false testimony from witnesses" are matters this Court held on page 30 of its December 26, 2017 ruling in *Brown* are part of "trial preparation" and "core prosecutorial functions."[15]

15.     As this Court held in *Bellamy*, Harris County <u>cannot be liable</u> for these policies, customs, or practices, because they were allegedly created by a prosecutor elected to represent the State, and whose purpose was to <u>enforce State penal law</u>.

---

[14]     Docket Entry No. 39 at pp. 24-27.
[15]     *Id.*, at p. 30.

16.     Finally, plaintiff alleged that former Harris County District Attorneys Charles Rosenthal and Mike Anderson were the relevant county policymakers behind these alleged policies. However, both this Court and the Fifth Circuit clearly hold that the Harris County District Attorney is <u>not</u> a county policymaker when acting in his or her prosecutorial capacity.  It is impossible for Brown to amend his complaint to fill in this missing element of his *Monell* claim.

17.     Harris County respectfully asks this Court to recognize the precedent in *Bellamy* and the Fifth Circuit cases cited by it and find that Harris County cannot be liable for the prosecutorial policies, customs, and practices of the Harris County District Attorney.

**C.  Under this Court's precedent, Harris County is the wrong party to this suit.**

18.     In *George v. Harris County, Texas*, this Court dismissed another case against Harris County based upon the alleged wrongful actions of the Harris County District Attorney's office. George alleged the district attorney had a policy of seeking writs of attachment in violation of the Texas Family Code.  This Court dismissed the claims against Harris County on multiple grounds.  The most obvious reason for dismissal was that the district attorney represents the State of Texas—not Harris County—and that Harris County is the wrong party to answer for a district attorney's alleged prosecutorial misconduct:

> Finally, Harris County and Fort Bend County are entitled to dismissal of three of George's claims—his § 1983 claims and his state-law malicious-prosecution claim—on an additional ground. George has sued the wrong party. These claims arise directly out of the criminal prosecutions against him. As this court noted in the earlier memorandum and opinion issued in this case, "[t]he prosecutorial actions alleged in the complaint are those of the State of Texas, not Harris County," and "'Texas law makes clear ... that **when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted**." (Docket Entry No. 20, at 4 (quoting *Esteves*, 106 F.3d at 678). "Consequently, the Fifth Circuit said, counties cannot be held liable for the actions of a district attorney engaged in a criminal prosecution." *Davis v. TDCJ*, Civ. A. No.

5:08cv166, 2009 WL 2601443, at *6 (E.D.Tex. Aug.20, 2009) (citing *Esteves*, 106 F.3d at 678); *see also Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 278 (5th Cir.2001) (holding that a county cannot be liable under § 1983 for failure to train the county's attorneys because those attorneys were state officers). . . . George's municipal-liability claims arising from his prosecution are against the State of Texas, providing an additional reason to dismiss those claims.[16]

19.     Furthermore, Judge Sim Lake reached the same conclusion on September 29, 2017 in the case of *Jane Doe v. Harris County*:

> For the reasons stated in § II.C.2, above, the court has already concluded that the actions of [assistant district attorney] Socias about which plaintiff complains were prosecutorial functions intimately associated with the judicial phase of the criminal process. Therefore, even if as plaintiff alleges, Socias' actions were ratified by then Harris County District Attorney Devon Anderson, Harris County cannot be held liable for those actions because they all occurred while Socias was acting in his prosecutorial capacity as an agent of the state, not Harris County.[17]

20.     As this Court made clear in *George,* and Judge Lake made clear in *Jane Doe,* a plaintiff's municipal-liability claims arising from his prosecution are against the State of Texas, and not Harris County. Under Texas law, Harris County cannot be liable for the State's prosecutorial decisions.

## D. Plaintiff lacks standing to sue Harris County for the prosecutorial policies, customs, or practices of the Harris County District Attorney.

21.     Fed. R. Civ. P. Rule 12(b)(1) allows a defendant to move for dismissal based on lack of subject matter jurisdiction.[18]

---

[16]     *George v. Harris County, Tex.*, CIV.A. H-10-3235, 2012 WL 2744332, at *16 (S.D. Tex. July 9, 2012)(Rosenthal, J.)(emphasis added).

[17]     *Doe v. Harris Cty., Texas*, 2017 WL 4402590, at *24 (S.D. Tex. Sept. 29, 2017).

[18]     Fed. R. Civ. P. Ann. Rule 12(b)(1) (West 2018).

22.     To establish a case or controversy sufficient to invoke federal jurisdiction, plaintiffs must satisfy three criteria: (1) they must show they suffered, or will soon suffer, an "injury in fact," (2) "**there must be a causal connection between the injury and the conduct complained of**," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." [19] If any one of these elements is missing, a plaintiff has no standing under Article III of the Constitution to assert a claim. [20]

23.     The Fifth Circuit clearly holds that "[g]iven that a district attorney represents the state in criminal prosecutions, the county, **which has no affirmative control over the prosecutor's decisions in a particular case,** should not be held liable when a prosecutor engages in unconstitutional conduct during a criminal proceeding." [21]

24.     As noted, the Harris County District Attorney's policymaking, supervision, and training relating to core prosecutorial functions are not administrative or managerial. The district attorney is a State—not county—official when enacting customs, policies, or practices in furtherance of the core prosecutorial functions. [22]

25.     Plaintiff alleged he was injured because the District Attorney had a "'whatever it takes' policy or custom and practice that encouraged assistant district attorneys "to aggressively pursue convictions regardless of the weight of the evidence against a particular defendant; to secure favorable witness testimony at any cost, including unlawful means of pressure and intimidation; [and] to unethically solicit false testimony from witnesses". [23] To establish the

---

[19]     *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (citing *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))(emphasis added).

[20]     *Id.*

[21]     *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (emphasis added).

[22]     *Bellamy*, 2017 WL 2080157 at *2-3.

[23]     Docket Entry No. 39 at pp. 21-24.

second element of standing against Harris County, Plaintiff must show the District Attorney acted as a *county official*.

26.     The plaintiff cannot establish the "causal connection" between the complained of conduct and his injuries.  As a matter of law, the Harris County District Attorney is a State official—not a county official—when acting in his or her prosecutorial capacity.

27.     Harris County does not have affirmative control over the Harris County District Attorney's actions in a particular case.  Harris County does not have affirmative control over the Harris County District Attorney's policies, practices, or customs regarding prosecution of any or all of her criminal cases for the State of Texas.  As a matter of law, Harris County did not cause Brown's alleged injuries, as they all stem from his prosecution.

28.     The Court should dismiss plaintiff's final claim against Harris County, Texas, with prejudice for want of subject matter-jurisdiction.

**III.**
**CONCLUSION AND PRAYER**

29.     This Court has consistently held that Harris County has no authority over, or responsibility for, the prosecutorial decisions and policies, practices, and customs of district attorneys. These are State elected officials responsible for enforcing State law.  The plaintiff does not have standing to sue Harris County because Harris County cannot legally be said to cause the complained of policies, practices, and customs. For the reasons provided, Harris County respectfully prays that Brown's one remaining claim against it be dismissed with prejudice.

Respectfully submitted,

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

*/S/ Patrick Nagorski*

PATRICK NAGORSKI
Assistant County Attorney
Federal I.D. No. 1902658
State Bar No. 24074787
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone:  (713) 274-5221
Facsimile: (713) 755-8924
patrick.nagorski@cao.htx.net

OF COUNSEL:
VINCE RYAN
HARRIS COUNTY ATTORNEY

SETH HOPKINS
Assistant County Attorney
Texas Bar No. 24032435
Federal (Southern District) No. 2043155
1019 Congress Plaza, 15th Floor
Houston, Texas  77002
(713) 274-5141 (telephone)
(713) 755-8924 (facsimile)
Seth.Hopkins@cao.hctx.net

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of January, 2018, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

/s/Patrick Nagorski
Patrick Nagorski

APPENDIX

APPENDIX A                      *Bellamy v. Harris County, Texas*, CV H-16-02925, 2017 WL
                                2080157 (S.D. Tex. May 15, 2017) (Rosenthal, J.).


APPENDIX B                      *George v. Harris County, Tex.*, CIV.A. H-10-3235, 2012 WL
                                2744332, at *16 (S.D. Tex. July 9, 2012)(Rosenthal, J.)
                                (emphasis added).

# APPENDIX A

2017 WL 2080157
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Houston Division.

David BELLAMY, et al, Plaintiffs,

v.

HARRIS COUNTY, TEXAS, et al, Defendants.

Civil Action No. H−16−02925
|
Signed 05/15/2017

**Attorneys and Law Firms**

Luis A. Cabassa, Steven Greg Wenzel, Wenzel Fenton Cabassa, PA, Tampa, FL, for Plaintiff.

Myrna L. Maysonet, Nancy A. Beyer, Greenspoon Marder, PA, Orlando, FL, Richard W. Epstein, Greenspoon Marder, PA—Corporate, Ft. Lauderdale, FL, for Defendants.

### MEMORANDUM AND OPINION

Lee H. Rosenthal, Chief United States District Judge

 **\*1** David and Heidi Bellamy sued Harris County, Texas and then-Harris County District Attorney Devon Anderson under 42 U.S.C. § 1983, alleging civil-rights violations. (Docket Entry No. 8). Harris County and the District Attorney's office moved to dismiss, Mr. and Ms. Bellamy responded, and the defendants replied. (Docket Entries No. 2, 11, 16, 15, 19, 28). After careful review of the complaint, the briefs, and the applicable law, the court grants the motions to dismiss with prejudice, and enters final judgment by separate order.[1] The reasons for these rulings are explained below.

### I. Background

The Bellamys' amended complaint alleges that police officers stopped their car in a traffic stop, searched it, then falsely claimed to find drugs and drug paraphernalia. The police then arrested, detained, and charged David Bellamy with a criminal offense, allegedly without legitimate basis and in violation of his federally protected rights. (Docket Entry No. 8 at 2–3). The complaint further alleges

that the District Attorney's office engaged in improper plea-bargaining tactics by lying about the existence of inculpatory evidence. In the alternative, the complaint alleges that the District Attorney's office destroyed any inculpatory evidence it had, but concealed that fact from the defense. Instead, the District Attorney's office continued to represent that inculpatory evidence existed in order to manipulate Mr. Bellamy into accepting a plea bargain, notwithstanding the fact that the prosecutors knew there was no inculpatory evidence.

The Bellamys have sued Harris County and District Attorney Devon Anderson under § 1983. The complaint alleges that "Harris County engaged in a wide-spread custom or practice of knowingly destroying evidence and not providing that information to those accused of crimes, and then leveraging guilty pleas and convictions with alleged evidence that either never existed, or did not exist during plea negotiations and entry of such pleas. Such a policy was implemented by Harris County and/or Devon Anderson, under the color of state law, and it was used to deprive Mr. Bellamy of his rights and privileges." (Id. at 3). The complaint alleges that Mr. Bellamy was arrested and detained without probable cause; that the County and the District Attorney knew that there was no evidence to show probable cause; that they failed to turn over exculpatory evidence or inform Mr. Bellamy that there was no evidence against him; and that they pursued a conviction or plea despite knowing that there was no evidence of his guilt. (Id. at 3–5).

### II. The Legal Standard Under Rule 12(b)(6)
 **\*2** Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 372 (5th Cir. 2008). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court elaborated on the pleading standards discussed in Twombly. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. Analysis

#### A. The District Attorney's Motion to Dismiss

District Attorney Anderson's motion to dismiss is granted with prejudice because the facts alleged, taken as true, show that she is entitled to absolute immunity as a matter of law. The misconduct that the Bellamys allege falls within the scope of the immunity doctrine. The Bellamys allege that District Attorney Anderson wronged Mr. Bellamy (and by extension, Ms. Bellamy) by knowingly filing baseless criminal charges against him; by failing to produce exculpatory evidence or admit that there was no inculpatory evidence; and by attempting to coerce him to plead guilty. Absolute immunity protects the decision to file charges, even when, as here, the plaintiff alleges that the prosecutor knew that the case was baseless. *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991). Absolute immunity similarly protects decisions on the disclosure of evidence, even when, as here, exculpatory evidence (or the absence of inculpatory evidence) was allegedly wrongfully concealed. *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). Absolute immunity protects prosecutors in the course of plea negotiations as well. *Humble v. Foreman*, 563 F.2d 780, 781 (5th Cir. 1977), *overruled on other grounds by Sparks v. Duval Cty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979); *see also Tubwell v. Dunn*, 12 F.3d 1097 (5th Cir. 1993) (unpublished table decision) (citing *Humble* and *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981)); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1492 (10th Cir. 1991); *Hernadez v. Kirkendall*, No. 13–CV–0685–DAE, 2014 WL 3853642, at *3 (W.D. Tex. Aug. 5, 2014); *Hart v. Harris Cty. D.A.*, No. CIV.A H–09–2145, 2009 WL 3602076, at *2 (S.D. Tex. Oct. 27, 2009).

The Bellamys' attempt in their responsive brief to cast the complaint as relating to an "administrative" action by District Attorney Anderson, (Docket Entry No. 19 at 3–6), does not salvage the claim. The complaint alleges that District Attorney Anderson herself was the one who took various improper actions. There is only a brief and nonspecific allegation that "Harris County engaged in a wide-spread custom or practice" of various

rights violations and that District Attorney Anderson implemented the policy. (Docket Entry No. 8 at ¶ 9).

Even assuming that that is sufficient to state a claim against District Attorney Anderson as a supervisor or policymaker, the Supreme Court has anticipated and rejected similar claims, holding that absolute immunity protects a prosecutor's performance of supervisory or administrative duties that are intimately related to core prosecutorial functions, such as supervision, policymaking, and training on *Brady* obligations. *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

**\*3** The Court made it clear in *Van de Kamp* that the sort of administrative duties that fall outside of the scope of absolute immunity are more in the line of "workplace hiring, payroll administration, the maintenance of physical facilities, and the like." *Id.* Those are not the kind of "administrative" duties that the Bellamys allege here. Instead, they allege administrative actions like those in *Van de Kamp*, which related to a prosecution office's training, supervision, policies, and information-management systems on *Brady* material. There, as here, the alleged actions all required "legal knowledge and the exercise of related discretion," putting them within the protection of absolute immunity. *Id.* at 344.

This case runs headlong into the problem that the *Van de Kamp* court sought to avoid: if District Attorney Anderson had individually committed each of the wrongs that the complaint alleges, she would be absolutely immune. Refusing to recognize that immunity based on allegations that the same actions were done by the same person in the same office, but in a supervisory or policymaking role, would "eviscerate" the immunity doctrine. *Id.* at 347. District Attorney Anderson is absolutely immune for the alleged wrongs in the complaint. Her motion to dismiss is granted.

#### B. Harris County's Motion to Dismiss

Harris County's motion to dismiss is granted because, as a matter of law, Texas counties are not liable for a district attorney's actions carried out in the course of enforcing state law. "Texas law makes clear ... that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th

Cir. 1997). The result is that "the actions of a Texas district attorney within the scope of [her] prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable." *Id.*; *see also George v. Harris Cty., Tex.*, No. CIV.A. H–10–3235, 2012 WL 2744332, at *16 (S.D. Tex. July 9, 2012) ("Consequently, the Fifth Circuit said, counties cannot be held liable for the actions of a district attorney engaged in a criminal prosecution." (quoting *Davis v. TDCJ*, Civ. A. No. 5:08–cv–166, 2009 WL 2601443, at *6 (E.D.Tex. Aug.20, 2009)). All of the Bellamys' allegations stem from the District Attorney's office's treatment of Mr. Bellamy, actions that occurred in the course of the office's performance of state law-enforcement duties. Taking the alleged facts as true, as a matter of law, the Bellamys have failed to state a claim on which relief can be granted against Harris County.

**IV. Conclusion**

For the reasons explained in this opinion, the motions to dismiss, (Docket Entries No. 2, 16), are granted. The dismissal is with prejudice and without leave to amend because amendment would be futile. The district attorney's alleged actions are protected by absolute immunity because they are prosecutorial decisions made in Mr. Bellamy's case. The County is not an appropriate defendant in a case challenging the District Attorney's actions in enforcing state criminal law.

**All Citations**

Slip Copy, 2017 WL 2080157

**Footnotes**

1    Devon Anderson is no longer the district attorney for Harris County. None of the parties to the suit has opined on whether the new district attorney, Kim Ogg, should be substituted as the defendant here. The complaint does not specify whether it seeks relief against Devon Anderson in her personal or official capacity. Because the court concludes that there is no basis for relief against either defendant, the change in office is not material to the outcome.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX B

2012 WL 2744332
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Christopher Ryan GEORGE, individually
and on behalf of the class of juveniles
similarly situated, or who were detained in
Harris County, Texas but never served with
an information or indictment, Plaintiffs,

v.

HARRIS COUNTY, TEXAS, et al., Defendants.

Civil Action No. H–10–3235.
|
July 9, 2012.

**Attorneys and Law Firms**

Karen M. George–Baunchand, The Baunchand Law
Firm, PLLC, Houston, TX, for Plaintiffs.

Randall Weaver Morse, Richmond, TX, F Clinton
Gambill, II, Scott Anthony Durfee, Assistant District
Attorney, Houston, TX, for Defendants.

**MEMORANDUM AND OPINION**

LEE H. ROSENTHAL, District Judge.

**\*1** This is a civil-rights lawsuit arising from events
surrounding the prosecution and imprisonment of the
plaintiff, Christopher R. George. The defendants are
Harris County, Texas; Fort Bend County, Texas; Anu
Shah, an assistant district attorney for Fort Bend County;
Mary McFaden, an assistant district attorney for Harris
County; and Kathryn Kahle, an assistant district attorney
for Harris County. Shah, McFaden, and Kahle, sued
in their individual capacities, are referred to collectively
as the "Prosecutor Defendants." [1] George has brought
numerous claims against the defendants under 42 U.S.C.
§§ 1983 and 1985 as well as Texas law. [2] He also seeks
to represent a class of juveniles who were charged with
a crime in Harris County by the State of Texas but not
served with a petition, information, or indictment. (*See*
Docket Entry No. 33, ¶ 4).

The following motions are pending:

- George has moved for leave to file an amended
statement of the proposed class. (Docket Entry No.
40). Harris County has responded. (Docket Entry
No. 42).

- George has moved "to strike all statements made by
his attorney of record at the hearing on or about
08/23/2011[.]" (Docket Entry No. 44). Harris County
has responded. (Docket Entry No. 45).

- George has moved for leave to file a second amended
complaint. (Docket Entry No. 48, Ex. B). Harris
County has responded. (Docket Entry No. 49).

- Harris County has filed a motion to enlarge the page
limits for its summary-judgment motion. (Docket
Entry No. 51). George has not responded, but the
motion is opposed.

- Harris County has moved for summary judgment.
(Docket Entry No. 52). George has responded, and
Harris County has replied. (Docket Entry Nos. 64–
65).

- Fort Bend County and Shah have moved to dismiss
George's amended complaint. (Docket Entry No. 53).

- McFaden and Kahle have moved to dismiss George's
amended complaint. (Docket Entry Nos. 55–56).

- George has moved for leave to file an untimely
response to the motion to dismiss. (Docket Entry No.
67).

Based on the motions and related filings, the extensive
record, and the applicable law, this court rules as follows:

- Harris County's motion to enlarge page limits,
(Docket Entry No. 51), is granted. [3]

- George's motion for leave to file a second amended
complaint, (Docket Entry No. 48, Ex. B), is denied.

  - George's motion for leave to file an untimely
  response to the motion to dismiss, (Docket Entry
  No. 67), is denied.

- Fort Bend County and Shah's motion to dismiss, (Docket Entry No. 53), is granted, with prejudice and without leave to amend.

- McFaden and Kahle's motion to dismiss, (Docket Entry Nos. 55–56), is granted, with prejudice and without leave to amend.

- Harris County's motion for summary judgment, (Docket Entry No. 52), is granted.

- George's remaining motions, (Docket Entry Nos. 40, 44), are denied as moot.[4]

**\*2** Based on these and prior rulings, final judgment is entered by separate order. The reasons for these rulings are explained below.

## I. Background and Procedural History

### A. The Allegations in George's Amended Complaint

Christopher George, an African–American resident of Fort Bend County, was born in January 1988. In March 2004, when he was 15 years old, he was accused of sexually assaulting L.B, who is Caucasian and was 17 years old at the time. (Docket Entry No. 24, ¶ 6.2). George alleges that extensive evidence existed casting doubt on the assault allegation. (*Id.,* ¶ 6.4).

In July 2004, Fort Bend County authorities charged George with sexual assault of another child, C.N. Anu Shah was the prosecutor. George alleges that extensive evidence existed casting doubt on this assault allegation as well. (*Id.,* ¶ 7.2).

In October 2004, both Fort Bend County and Harris County charged George with aggravated sexual assault of a child, L.B. (*Id.,* ¶ 2.1). The Fort Bend County Sheriff's Department took George into custody. He remained incarcerated during his prosecution in County Court at Law No. 2 of Fort Bend County. (*Id.,* ¶ 6.2). George alleges that while he was incarcerated, "Fort Bend County went door to door in Plaintiff's neighborhood, ... passing out flyers and/or stating that Plaintiff was a serial rapist, who was armed, and dangerous." (*Id.,* ¶ 7.3). George alleges that his family's property was vandalized and that shots were fired at his mother and grandmother, but the Fort Bend County police refused to act in response. (*Id.,* ¶ 7.4).

In January 2006, George was acquitted in Fort Bend County of the charge of sexually assaulting L.B. and was released from custody. (*Id.,* ¶ 6.2). The Harris County charge remained pending. Soon after George's acquittal in Fort Bend County, the 313th District Court of Harris County issued a writ leading to George's incarceration in Harris County jail. (*See id.,* ¶ 2.1). When George turned 18 years old, the Harris County District Attorney's Office moved to certify him for trial as an adult for the alleged assault of L.B. under the Harris County charge. (*Id.,* ¶ 6.3). The 313th District Court granted the motion in May 2006, and George's case was transferred to the 184th Criminal District Court of Harris County. (*Id.,* ¶ 6.5).

George alleges that the juvenile court's certification of him for trial as an adult violated section 54.02 of the Texas Family Code, which states that "[t]he petition and notice requirements of Sections 53.04, 53.05, 53.06 and 53.07 of this code must be satisfied" in order for "[t]he juvenile court [to] waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings [.]" TEX. FAM.CODE § 54.02; *see also In re B.R.S.,* No. 03–00–00076–CV, 2000 WL 1228005, at \*1 (Tex.App.-Austin Aug.31, 2000, no pet.); *Light v. State,* 993 S.W.2d 740, 745–46 (Tex.App.-Austin 1999), *rev'd on other grounds in* 15 S.W.3d 104 (Tex.Crim.App.2000). According to George, he was never served "with any petition, indictment, information, or certification which alleged that [he] was a juvenile who had engaged in conduct in violation of the laws of the State of Texas." (Docket Entry No. 24, ¶ 6.5). Absent such service, George alleges, the 313th District Court never had jurisdiction to transfer his case to the 184th Criminal District Court, which in turn led to his continued incarceration in Harris County jail. (*Id.,* ¶ 6.6).

**\*3** George alleges that he remained in the Harris County jail until the "charges against him were dismissed in Harris County on or about September 8, 2008." (*Id.,* ¶ 2.1).

### B. Procedural History

On September 8, 2010, George filed suit in this court against Harris County and the Harris County District Attorney's Office. (Docket Entry No. 1). Those defendants moved to dismiss. (Docket Entry No. 3). While the defendants' motion to dismiss was pending, the court in January 2011 entered a Scheduling and Docket Control Order. (Docket Entry No. 13). This order formally opened

discovery. The court set June 3, 2011 as the deadline for adding new parties or amending pleadings and set February 3, 2012 as the discovery cutoff date.

On May 24, 2011, this court granted the defendants' motion to dismiss. (Docket Entry No. 20). The court explained that, to the extent that George attributed his prosecution to Harris County and the Harris County District Attorney's Office, "[t]he prosecutorial actions alleged in the complaint are those of the State of Texas" because " 'Texas law makes clear ... that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted.' " (*Id.,* at 4 (quoting *Esteves v. Brock,* 106 F.3d 674, 678 (5th Cir.1997))). The claims against both must be dismissed, the court concluded, because a plaintiff may not pursue damages claims against a state under §§ 1983 or 1985. (*Id.,* at 4–5). To the extent that George sought to hold individual prosecutors liable, he had not alleged any basis to overcome prosecutorial immunity. (*Id.,* at 5). The court dismissed the claim, but with leave to amend by June 24, 2011. (*Id.*).

George did not amend by June 24. On June 28, the defendants moved for final judgment. (Docket Entry No. 23). A day later, George moved for leave to file an untimely amended complaint. (Docket Entry No. 25). George explained that the missed deadline was attributable to the illness of his attorney, Ms. Karen George–Baunchand. (Docket Entry No. 29, ¶ 2). Over the defendants' objection, (Docket Entry Nos. 27, 30), this court granted George's motion for leave to file the untimely amended complaint. (Docket Entry No. 31).

The amended complaint continued to name as defendants Harris County and the Harris County District Attorney's Office and added Fort Bend County and the Prosecutor Defendants. Against all defendants, George alleged claims for (1) unlawful search and seizure, (2) unlawful detention and arrest, (3) false imprisonment, (4) assault and battery, (5) malicious prosecution, (6) "official oppression," and (7) racial discrimination. As relief, George sought damages and a permanent injunction prohibiting:

> Defendants, its agents, employees, assigns, and all persons acting in concert or participating with them from conducting or permitting to be conducted wrongful arrest and/or

detention of African Americans and Hispanics in Harris County, Texas as well as enjoining said persons from arresting or permitting the arrest of any individual where there exist no probable cause[.]

**\*4** (Docket Entry No. 24, at 21–22). In the amended complaint, George alleged that he sought to represent "a class of persons who were arrested and/or detained in Harris County, Texas who were never served with an information or indictment alleging that they had violated a law or statute in the State of Texas[.]" (*Id.,* ¶ 2.2). This was the first time class-action allegations appeared in George's complaint.

The court ordered George to file a statement defining the purported class with greater specificity. (Docket Entry No. 31, at 2). George stated that he sought to certify a class under Federal Rule of Civil Procedure 23(b)(3) consisting of juveniles who, between 2007 and 2011, were charged with a crime in Harris County by the State of Texas but never served with a petition, information, or indictment as required under the Texas Family Code. (*See* Docket Entry No. 33, ¶ 4; Docket Entry No. 36). On behalf of the proposed class, George asserted

> claims presented in Plaintiff's First Amended Complaint against Defendant, Harris County relating to the pattern and/or practice of Harris County failing to, over the course of many years, serve juvenile defendants, who were detained in Harris County, and/or who were before the Harris County Juvenile Courts because they were accused and/or charged with a crime in violation of the laws of the State of Texas.

(Docket Entry No. 33, ¶ 1). For each claim, George sought monetary relief "as outlined in Plaintiff's First Amended Petition." (*Id.,* ¶ 3).

The pending motions are analyzed below.

## II. George's Motion for Leave to File a Second Amended Complaint

On February 24, 2012, George filed a proposed second amended complaint, (Docket Entry No. 48), and attached a motion for leave to file that complaint, (*id.,* Ex. B). According to George, good cause for amendment exists because he wishes (1) to correct the spelling of one of the defendant's names, (2) to amend the allegations with respect to malicious prosecution to make clear which defendants are accused on each charge, and (3) to clarify his attorneys of record. (*Id.,* at 2). George did not mention in the motion that the proposed second amended complaint also adds allegations (though not a separate damages claim) about the "Defendants" denying him medical care in 2004 and 2005 while he was in Fort Bend County jail. (*See* Docket Entry No. 48, ¶¶ 7.5–7.7).

Harris County opposed the motion for leave, stating two primary reasons. First, undue delay, because George did not move for leave to file the second amended complaint until discovery had ended and the deadline for filing dispositive motions—March 2—was imminent. Second, futility, because the Prosecutor Defendants were entitled to absolute prosecutorial immunity and because George had alleged no facts that could support municipal liability for Harris County and Fort Bend County. (*See* Docket Entry No. 49, ¶¶ 10–11).

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 994 (5th Cir.2005) (internal quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 270 (5th Cir.2010). [5] Additionally, "[u]nder FED. R. CIV. P. 16(b)(4), a party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension. The four factors relevant to good cause are: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment, and (4) the availability of a

continuance to cure such prejudice." *E.E.O.C. v. Service Temps Inc.,* 679 F.3d 323, 333–34 (5th Cir.2012) (internal quotation marks omitted).

**\*5** Whether reviewed under Rule 15(a) or Rule 16(b)(4), granting George leave to amend at this late stage is unwarranted. All four Rule 16(b)(4) factors support denying leave to amend. First, George has not provided any explanation for waiting nearly eight months after filing his amended complaint to seek leave to file a new proposed amended complaint that adds factual allegations available to him when he first filed suit. Second, George has not identified the importance of the proposed amendments to his case. The proposed second amended complaint expands a malicious-prosecution claim against Harris County, but this claim was already a part of the amended complaint's broader malicious-prosecution claim against all defendants. Indeed, the malicious-prosecution allegations are materially indistinguishable from those in the amended complaint. And the added factual allegations about the denial of proper medical care while George was in Fort Bend County custody are irrelevant because, despite his numerous § 1983 claims, he has not asserted a damages claim for denial of medical care. Third, the defendants would be prejudiced by allowing George to amend at this late stage. Discovery had already closed when George moved for leave to amend and the dispositive motions deadline was imminent. "To grant [George] leave to amend is potentially to undermine [the defendants'] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint." *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1151 (5th Cir.1990) (internal quotation marks omitted). Fourth, the prejudice that would occur could not be cured by a continuance. The defendants have filed their dispositive motions. George has responded to the summary-judgment motion and has chosen not to file a timely response to the motions to dismiss. The motions are ripe for decision. Allowing George to amend —requiring the filing of new motions, responses, and replies, and the additional delay of awaiting a ruling from the court—would exacerbate the potential prejudice to the defendants. *See Valcho v. Dallas Cnty. Hosp. Dist.,* 658 F.Supp.2d 802, 815 (N.D.Tex.2009).

These reasons also demonstrate why leave to amend would be improper under Rule 15(a). George unduly delayed in seeking leave to amend a complaint to add

(or "clarify") allegations based on facts and circumstances available to him when he first filed suit. The defendants would be prejudiced by allowing George to amend after discovery had closed and on the eve of the pretrial-motions deadline. Granting leave to amend would further delay resolution of this case. Finally, amendment would be futile. As explained in detail below, the defendants are entitled to the dismissal of all claims, with prejudice. That outcome (and the reasons supporting that outcome) would be no different if the court granted leave to file the proposed second amended complaint.

In sum, under either Rule 15(a)'s substantial-reason standard or Rule 16(a)(4)'s good-cause standard, there is no basis to grant George leave to amend again. His motion is denied.

## III. The Defendants' Motions to Dismiss and for Summary Judgment

### A. Background

**\*6** Three dispositive motions are pending. Harris County has moved for summary judgment. (Docket Entry No. 52). Fort Bend County and Shah have moved to dismiss for failure to state a claim under Rule 12(b)(6). (Docket Entry No. 53). McFaden and Kahle also have moved to dismiss under Rule 12(b)(6). (Docket Entry Nos. 55–56). After the response deadline had passed, George's counsel moved for an extension of time to file responsive briefs to both motions. (Docket Entry No. 61). Despite Harris County's opposition, (Docket Entry No. 62), this court granted the motion, giving George until May 12, 2012 to file responsive briefs but cautioning that "[n]o further extensions will be granted." (Docket Entry No. 63). George's counsel responded to the summary judgment motion on May 13. (Docket Entry No. 64). Despite the admonishment that no further extensions would be granted, the court—noting that Harris County has not sought to strike the untimely response—will allow the late-filed response. (Docket Entry No. 65).

George responded to the motion for summary judgment, but not to the motions to dismiss. On June 25—almost three months after the response to the motions to dismiss was originally due, and six weeks after the *extended* deadline—George again moved for leave to file an untimely response. (Docket Entry No. 67). This motion for leave does not explain why George was able to file a response to the summary judgment motion by May 13

but not a response to the motions to dismiss. The only meaningful difference between the motion seeking leave to file an untimely response to the motions to dismiss and the previous (untimely) motion seeking leave to file an untimely response to the summary judgment motion, (Docket Entry No. 61), is this addition: "Thereafter, Plaintiff's illness continued." (Docket Entry No. 67, at 2). This appears to be a reference to the illness of George's counsel, although it is unclear. (*See, e.g.,* Docket Entry No. 29, ¶ 2). Counsel does not attempt to explain why she was able to respond to the summary judgment motion a day after the May 12 deadline but not to the motions to dismiss, even if her—or the plaintiff's—"illness continued." Moreover, this court expressly warned that "[n]o further deadline extensions will be granted." (Docket Entry No. 63). George lacks good cause for an additional extension. A late response is not allowed. *See Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984) ("A history by counsel of ignoring these time limits is intolerable.").

The dispositive motions are addressed below.

### B. The Legal Standards

#### 1. Rule 12(b)(6)

A complaint may be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. *Iqbal,* 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly,* 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement' "; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556).

Facial plausibility requires "the plaintiff [to] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557).

**\*7** District courts, acting on their own initiative, may dismiss for failure to state a claim under Rule 12(b)(6). *Lozano v. Ocwen Federal Bank, FSB,* 489 F.3d 636, 642 (5th Cir.2007). The Fifth Circuit has suggested—though "stopping short of adopting a bright line rule"—that fairness requires the plaintiff have "both notice of the court's intention and an opportunity to respond" before *sua sponte* dismissal. *Id.* at 643 (internal quotation marks omitted). Notice is not required, however, "as long as the plaintiff has alleged his best case." *Id.* (internal quotation marks omitted).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir.2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *Steury,* 625 F.3d at 270. A district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009); *see also Carroll v. Fort James Corp.,* 470 F.3d 1171, 1175 (5th Cir.2006) (affirming a district court's dismissal for failure to state a claim without leave to amend after the court "instructed [the plaintiffs] to

plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

### 2. Rule 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir.2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 326 (5th Cir.2009) (internal quotation marks omitted). " 'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.' " *United States v. $92,203.00 in U.S. Currency,* 537 F.3d 504, 507 (5th Cir.2008) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)).

**\*8** When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart,* 486 F.3d 112, 119 (5th Cir.2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.' " *Boudreaux,* 402 F.3d at 540 (quoting *Little,* 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves,* 538 F.3d 373, 376 (5th Cir.2008).

#### C. The Claims Asserted in the Amended Complaint

At the beginning of the amended complaint, George states that his claims arise "under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, the 4th, 5th, 8th, and 14th Amendments to the United States Constitution, as well as actions under the common law, constitutional law, and laws of the State of Texas." (Docket Entry No. 24, at 1). George then characterizes his action as solely a federal one: "This is an action under Title 42 U.S.C. Section 1983, 42 U.S.C. § 1985, and 42 U.S.C. Section 1986[.]" (*Id.*, ¶ 1.1). George then states more specifically which claims he is asserting, and under what law:

(a) Violation of 42 U.S.C. Sec.'s 1983 and 1985: unlawful search and seizure;

(b) Violation of 42 U.S.C. Sec.'s 1983 and 1985: unlawful detention, and arrest;

(c) Violation of 42 U.S.C. Sec's 1983 and 1985: State law claims of false imprisonment;

(d) State law claim of assault and battery;

(e) State law claim of malicious prosecution, and;

(f) Violation of 42 U.S.C. Sec.'s 1983 and 1985: official Oppression.

(*Id.*, ¶ 1.2).

George changed the claims in the amended complaint when he alleged each cause of action individually, and he added a seventh cause of action for racial discrimination. (*Id.*, ¶¶ 14.1–14.8). For each claim, including the state-law claims, he "specifically plead[ed] the applicability of 42 U.S.C.A. §§ 1983 and 1985." (*Id.*, ¶ 9.2; *see also id.*, ¶¶ 8.2, 10.2, 11.2, 12.2, 13.2, 14.2). The law is clear, however, that state-law claims for assault and battery and malicious prosecution may not proceed under § 1983. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812–13 (5th Cir.2010) (holding that there is no "freestanding § 1983 malicious prosecution claim"); *Smith v. Spina*, 477 F.2d 1140, 1143–44 (3d Cir.1973) (explaining that assault and battery arises under state law, not § 1983). This court gives George the benefit of the doubt by assuming that he intends to assert the following claims, identified most clearly in the amended complaint's introduction: (1) unlawful search and seizure, (2) unlawful detention and arrest, (3) false imprisonment, (4) racial discrimination, and (5) "official oppression" as federal-law claims under §§ 1983 and 1985; and (6) assault and battery and (7) malicious prosecution as state-law claims. (*See* Docket Entry No. 24, ¶ 1.2; *see also id.*, ¶ 14.2 (pleading racial discrimination, not mentioned in the introduction, under §§ 1983 and 1985)).

**\*9** Even with the benefit of the doubt, however, George's amended complaint has some obvious deficiencies. There is no cause of action, whether under federal or Texas law, for "official oppression." *See Callis v. Sellars*, 953 F.Supp. 793, 800 (S.D.Tex.1996) ("official oppression is a criminal offense rather than an intentional tort" (citing TEX. PENAL CODE § 39.03)). Three of George's claims—his federal claims for unlawful search and seizure, for unlawful arrest and detention, and for false imprisonment—are identical: they all arise from George's allegations that Fort Bend County and Harris County had him unlawfully imprisoned while he faced charges for the alleged assault of L.B. These claims are properly addressed as asserting a cause of action for false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."); *Asten v. City of Boulder*, 652 F.Supp.2d 1188, 1197 (D.Colo.2009) (explaining that a claim for unlawful seizure is duplicative of a claim for false imprisonment).

There are, in summary, two groups of claims: §§ 1983 and 1985 claims for (1) false imprisonment and (2) racial discrimination; and state-law claims for (3) assault and battery and (4) malicious prosecution.[6] They are addressed below.

#### D. Dismissal Based on Limitations

The defendants argue that each of the claims is barred by the applicable statute of limitations. George appears to contend that some of the claims are governed by a four-year limitations period and others by a two-year period. George concludes that, regardless of the limitations period, he timely filed his claims in September 2010 or that, alternatively, the limitations period should be equitably tolled due to his alleged mental disability. (*See* Docket Entry No. 64, at 24–25).

"The limitations period for a § 1983 action is determined by the state's personal injury limitations period, which

in Texas is two years." *Whitt v. Stephens Cnty.,* 529 F.3d 278, 282 (5th Cir.2008) (internal citations omitted). [7] Limitations "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Edmonds v. Oktibbeha Cnty., Miss.,* 675 F.3d 911, 916 (5th Cir.2012) (internal quotation marks omitted).

For § 1983 claims based on false imprisonment followed by criminal proceedings, limitations "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace,* 549 U.S. at 397. In October 2004, George was charged with aggravated sexual assault on a child, L.B., in both Fort Bend County and Harris County. (Docket Entry No. 24, ¶ 2.1). The Fort Bend County Sheriff's Department promptly took him into custody. (*Id.,* ¶ 6.2). After his acquittal in Fort Bend County, George was detained again in January 2006 by Harris County authorities on that county's charges. (*See id.,* ¶ 2.1). George did not file this suit until 2010 and did not add Fort Bend County or Shah as defendants until 2011. His claims based on allegations that he was falsely imprisoned for the October 2004 arrest and the January 2006 arrest are barred by limitations.

**\*10** George's racial discrimination claims against Fort Bend County and Shah are based on alleged actions taken during George's trial in the Fort Bend County court. (*See* Docket Entry No. 24, ¶¶ 14.5–14.6). That trial ended in January 2006. George does not allege facts that he did not know or could not have reasonably have learned during the trial. His claims for racial discrimination based on the Fort Bend County trial are untimely and barred.

The claims against Harris County, McFaden, and Kahle are based on the "Defendants' refus[al] to properly investigate the alleged incidents because of Plaintiff's race and color." George alleges that he learned this when "Harris County Detective LNU admitted in open court that he did not conduct an investigation into the false allegations made by [L.B.]" (*Id.,* ¶ 14.4). According to George, his trial on the charge of sexually assaulting L.B. ended in dismissal on September 8, 2008. (*Id.,* ¶ 2.1). There is no indication when the detective's statement was made; giving George the benefit of the doubt, it could have been made as late as September 8. The racial-discrimination claim against Harris County, Kahle, and McFaden cannot be dismissed on the basis of the pleadings due to limitations.

Under Texas law, an assault-and-battery claim is subject to a two-year statute of limitations. *See, e.g., Alvarado v. Shipley Donut Flour & Supply Co.,* 526 F.Supp.2d 746, 766 n. 49 (S.D.Tex.2007) (citing TEX. CIV. PRAC. & REM.CODE § 16.003). George bases this claim on assaults against him while he was incarcerated. (*See* Docket Entry No. 24, ¶ 11.3(c)). Although the amended complaint does not clarify whether the alleged assaults occurred in the Fort Bend County jail or the Harris County jail, George's response to Harris County's summary-judgment motion refers specifically to assaults during the Harris County trial. (*See* Docket Entry No. 64, at 11–12). Assuming, however, that George raises an assault-and-battery claim against Fort Bend County and Shah, it is barred by limitations. George was in the Fort Bend County jail from October 2004 to January 2006. Whether the filing date is September 2010, when the original complaint was filed, or June 2011, when the amended complaint naming Fort Bend County and Shah as defendants for the first time was filed, the assault-and-battery claim against them is untimely.

The issue is not as clear with respect to Harris County, McFaden, and Kahle. George alleges that the Harris County claims against him were dismissed in September 2008 and that he was released on that date. George appears to have been in the Harris County jail from January 2006 through September 8, 2008. The amended complaint does not allege when the alleged assaults occurred. Again giving George the benefit of the doubt, the assaults could have occurred as late as September 8. The assault-and-battery claim against Harris County, McFaden, and Kahle cannot be dismissed on the basis of limitations based on the pleadings.

**\*11** The final claim is George's state-law claim for malicious prosecution. Under Texas law, malicious prosecution is governed by a one-year statute of limitations. *See Roehrs v. Conesys, Inc.,* 332 F. App'x 184, 189 (5th Cir.2009) (per curiam); *Torres v. GSC Enters., Inc.,* 242 S.W.3d 553, 561 (Tex.App.-El Paso 2007, no pet.). "Limitations begin to run when the criminal prosecution is terminated." *Torres,* 242 S.W.3d at 561. George's prosecution in Fort Bend County ended in January 2006. His prosecution in Harris County ended in September 2008. George did not file his malicious-prosecution claim against Harris County until September 2010, and the additional claim against Fort

Bend County until June 2011. Clearly, any claim for malicious prosecution under Texas law is untimely.

George argues that equitable tolling applies to excuse his failure to file within the limitations period. "[E]quitable tolling applies only in rare and exceptional circumstances." *Harris v. Boyd Tunica, Inc.,* 628 F.3d 237, 239 (5th Cir.2010) (internal quotation marks omitted); *see also Granger v. Aaron's, Inc.,* 636 F.3d 708, 712 (5th Cir.2011) ("Equitable tolling is to be applied 'sparingly.' " (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002))). The plaintiff bears the burden of establishing the right to equitable tolling. *Granger,* 636 F.3d at 712. Equitable tolling generally applies where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Harris,* 628 F.3d at 239 (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 & nn. 3–4, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

George asserts that he suffered from a mental disability while he was incarcerated, which justifies equitable tolling. Many circuits follow "the traditional rule that mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996) (emphasis in original); *see also Barrett v. Principi,* 363 F.3d 1316, 1319–20 (Fed.Cir.2004) (surveying circuit cases). In these circuits, "a plaintiff seeking tolling on the ground of mental incapacity must come forward with evidence that a mental condition prevented him from understanding and managing his affairs generally and from complying with the deadline he seeks to toll." *Jessie v. Potter,* 516 F.3d 709, 715 (8th Cir.2008). In *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232–33 (5th Cir.1999), the Fifth Circuit "assumed that mental incapacity could warrant tolling, but found equitable tolling inappropriate because the plaintiff did not submit evidence to support it." *Vidal v. Chertoff,* 293 F. App'x 325, 329 (5th Cir.2008) (per curiam). That is the case here: the only evidence George cites in support of his mental incapacity are statements allegedly made by Harris County's counsel during an August 2011 hearing that "George suffered from a mental disease and/or defect, severe depression, and psychosis, and was treated on numerous occasions by Harris County Psychiatrist for the same." (Docket Entry No. 64, at

24). George's counsel did not submit a transcript of this hearing, any evidence of this diagnosis and treatment, or any other evidence of George's condition during the relevant periods.

**\*12** Even if there was evidence of a diagnosis of mental incapacity, "[a] diagnosis of mental illness is not enough to justify tolling without evidence that the illness actually prevented the plaintiff from complying with the deadline." *Jessie,* 516 F.3d at 714 (citing cases). George has neither identified nor submitted evidence of mental incapacity that prevented him from being able to act on his legal rights. *See Miller,* 77 F.3d at 191. This is not the "rare or extraordinary" case for which equitable tolling is appropriate. *Harris,* 628 F.3d at 239.

In sum, George's causes of action for false imprisonment under § 1983 and for malicious prosecution under Texas law are barred by limitations. His causes of action for racial discrimination under § 1983 and for assault and battery under Texas law against Fort Bend County and Shah are barred by limitations. On the current record, dismissal of these claims against Harris County, McFaden, and Kahle on the basis of limitations is inappropriate.

### E. Dismissal Based on Grounds Besides Limitations

Dismissal of all claims against all defendants is warranted on numerous grounds besides limitations. The analysis begins with the two state-law claims (assault and battery and malicious prosecution), then addresses the two § 1983 claims (false imprisonment and racial discrimination), the derivative § 1985 conspiracy claims, and finally the class-action allegations.

### 1. The State–Law Claims

Texas recognizes the doctrine of governmental immunity. "Governmental immunity is comprised of immunity from both suit and liability." *City of Dallas v. Albert,* 354 S.W.3d 368, 373 (Tex.2011). "[I]mmunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented[.]" *Id.* Governmental immunity applies "to subdivisions of the state, such as counties." *Alcala v. Tex. Webb Cnty.,* 620 F.Supp.2d 795, 801 (S.D.Tex.2009) (citing *Harris Cnty. v. Sykes,* 139 S.W.3d 635, 638 (Tex.2004)). "A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity."

*Forgan v. Howard Cnty., Tex.,* 494 F.3d 518, 520 (5th Cir.2007) (citing *Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 586–87 (Tex.2001)). The Texas Tort Claims Act, TEX. CIV. PRAC. & REM.CODE § 101.001 *et seq.,* "provides a limited waiver of governmental liability from suit." *Univ. of Tex. Med. Branch at Galveston v. Tatum,* —— S.W.3d ——, 2012 WL 2357367, at *3 (Tex.App.-Houston [1st Dist.] 2012, no pet. h.) (citing TEX. CIV. PRAC. & REM.CODE § 101.021). The Act specifically does not waive governmental immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort[.]" TEX. CIV. PRAC. & REM.CODE § 101.057(2). [8]

George has asserted two intentional-tort causes of action against the counties: assault and battery and malicious prosecution. Harris County and Fort Bend County are entitled to governmental immunity for these claims. *See, e.g., Humphreys v. City of Ganado, Tex.,* No. 11–41082, 2012 WL 1003573, at *3 (5th Cir. Mar.26, 2012) (per curiam) (so holding for malicious-prosecution claim and collecting cases); *Pearlman v. City of Fort Worth, Tex.,* 400 F. App'x 956, 959 (5th Cir.2010) (per curiam) (so holding for assault and battery).

**\*13** Governmental immunity also extends to state employees sued in their official capacities. *Alcala,* 620 F.Supp.2d at 801 (citing *Univ. of Tex. Med. Branch at Galveston v. Hohman,* 6 S.W.3d 767, 777 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.)). George has sued the Prosecutor Defendants in their individual capacities. But the Texas Tort Claims Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

TEX. CIV. PRAC. & REM.CODE § 101.106(f). The conduct that is the basis of George's state-law claims against the Prosecutor Defendants—their actions in prosecuting George, which included contributing to his alleged wrongful incarceration (and the consequences that resulted from his incarceration) [9]—fall within the general

scope of a prosecutor's duties. The Prosecutor Defendants are entitled to dismissal of the state-law, intentional-tort claims under governmental immunity.

Although "governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 368–69 (Tex.2009). A party cannot circumvent governmental immunity by characterizing a suit for money damages as a broad claim for equitable relief. *Cf. Albert,* 354 S.W.3d at 378 (so holding in a case involving a claim for declaratory judgment). In *City of Houston v. Williams,* 216 S.W.3d 827 (Tex.2007) (per curiam), the Texas Supreme Court "held that because the firefighters' only alleged injury had already occurred and their only plausible remedy was an award of money damages, they could not circumvent the City's governmental immunity by requesting declaratory relief." *Albert,* 354 S.W.3d at 378 (citing *Williams,* 216 S.W.3d at 829).

George's injuries have already occurred, making damages his plausible remedy. George seeks "[a] permanent injunction enjoining Defendants, its agents, employees, assigns, and all persons acting in concert or participating with them from conducting or permitting to be conducted wrongful arrest and/or detention of African Americans and Hispanics in Harris County, Texas as well as enjoining said persons from arresting or permitting the arrest of any individual where there exist no probable cause[.]" (Docket Entry No. 24, at 21–22). Among other problems, this request is overbroad. As the Fifth Circuit explained in *John Doe # 1 v. Veneman,* 380 F.3d 807 (2004):

> Rule 65 of the Federal Rules of Civil Procedure requires an injunction to be "specific in terms; [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The scope of injunctive relief is dictated by the extent of the violation established. The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order. An injunction fails to meet these standards when it is overbroad or vague.

**\*14** *Id.* at 818 (some internal quotation marks and alterations omitted) (quoting FED. R. CIV. P. 65(d)). Additionally, the Texas Supreme Court has made clear

that a plaintiff cannot circumvent governmental immunity by requesting overly broad injunctive relief as a remedy for past harm. Finally, neither the allegations in George's amended complaint nor the record evidence supports an inference that George continues to suffer adverse effects from the alleged illegal conduct or that he faces any " 'real and immediate threat that he w[ill] again' suffer similar injury in the future." *In re Stewart,* 647 F.3d 553, 557 (5th Cir.2011) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)); *see also Renne v. Geary,* 501 U.S. 312, 320–21, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." (internal quotation marks and alteration omitted)). To the extent that George seeks injunctive relief related to juvenile courts entering writs of attachment without jurisdiction, George is no longer a juvenile and thus no longer faces such a threat.

Finally, the Texas Tort Claims Act prohibits George's tort claims against both Harris and Fort Bend counties and their employees. "If the plaintiff sues both the governmental unit and any of its employees under the TTCA, 'the employees shall immediately be dismissed on the filing of a motion by the governmental unit.' " *Bustos v. Martini Club Inc.,* 599 F.3d 458, 462 (5th Cir.2010) (quoting TEX. CIV. PRAC. & REM.CODE § 101.106(e)); *see also Franka v. Velasquez,* 332 S.W.3d 367, 369 (Tex.2011). "[T]he immunity extended by section 101.106 is harsh, for it requires a plaintiff to elect at the outset of the litigation whether to pursue a defendant in *any* governmental capacity for which his employer later may be found to have immunity, and thus eliminate any pursuit of claims brought against the defendant in an individual capacity." *Schauer v. Morgan,* 175 S.W.3d 397, 401 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (emphasis in original). The Act's election-of-remedies provision provides an additional reason to dismiss the state-law claims against the Prosecutor Defendants.

### 2. The § 1983 Claims

George's § 1983 claims for false imprisonment and racial discrimination against the Prosecutor Defendants fail as a matter of law. "[P]rosecutors are absolutely immune from liability in § 1983 lawsuits" over "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.' " *Van de Kamp v. Goldstein,* 555 U.S. 335, 341, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009)

(quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate for the State[.]' " *Cousin v. Small,* 325 F.3d 627, 632 (5th Cir.2003) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 272, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). Courts are to look "to whether the challenged activity falls within the category of conduct in which a prosecutor is generally authorized to engage, rather than ... to the wrongful nature or excessiveness of the conduct." *Id.* There is no egregiousness exception to prosecutorial immunity. "Wilful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocacy function." *Id.* (citing *Imbler,* 424 U.S. at 430).

**\*15** Broadly read, the false-imprisonment claim against Shah (and Fort Bend County) is based on her charging George with aggravated sexual assault of L.B. (or C.N.), despite extensive evidence of his innocence, which then led to his wrongful incarceration in the Fort Bend County jail until his acquittal. (*See* Docket Entry No. 24, ¶¶ 2.1, 2.4, 9.6). Also broadly read, the false-imprisonment claim against McFaden and Kahle (and Harris County) is based on their having George incarcerated in Harris County while they prosecuted him for sexually assaulting L.B., under an unlawful writ of attachment. (*See id.,* ¶¶ 2.5–2.6, 9.4–9.5). The amended complaint alleges that Shah was the prosecutor in George's Fort Bend County trial; the complaint does not state any facts about McFaden and Kahle, although it appears that they were the prosecutors in George's Harris County trial. Even broadly read, the allegations against the Prosecutor Defendants establish absolute prosecutorial immunity. The claims George asserts relate to, and arise out of, the Prosecutor Defendants initiating a criminal prosecution against George, first in Fort Bend County and then in Harris County. "The decision to file or not file criminal charges is protected by prosecutorial immunity." *Quinn v. Roach,* 326 F. App'x 280, 292 (5th Cir.2009) (citing *Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir.1990)); *see also Buckley,* 509 U.S. at 272 (holding that prosecutorial immunity extends to those acts "preparing for the initiation of judicial proceedings or for trial," which "include the professional evaluation of the evidence assembled by the

police and appropriate presentation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made"); *Boyd v. Biggers,* 31 F.3d 279, 285 (5th Cir.1994) (per curiam) ("Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and carrying the case through the judicial process."). George alleges that filing the sexual-assault charges against him in Fort Bend County, and pursuing the charges against him in Harris County after the Fort Bend County acquittal, led to his incarcerations in Fort Bend County and Harris County. But filing and pursuing criminal charges are clearly covered by prosecutorial immunity, and this immunity is absolute. It applies even if the evidence before Shah pointed against prosecuting George for sexually assaulting L.B., and even if Kahle and McFaden could not lawfully obtain a writ of attachment for George. *See Harvey v. Montgomery Cnty., Tex.,* ——F.Supp.2d ——, 2012 WL 1551337, at *10 (S.D.Tex.2012) (holding that a county prosecutor was entitled to absolute prosecutorial immunity because even if the conduct was egregious, the "allegations concern [his] actions in initiating, investigating, and pursuing a criminal prosecution").

For the same reasons, the Prosecutor Defendants are entitled to absolute prosecutorial immunity from the racial-discrimination claim. Moreover, the amended complaint does not contain factual allegations asserting that McFaden and Kahle discriminated against George on the basis of his race. The facts alleged in the complaint relate to a Harris County detective's allegedly inadequate investigation. (*See* Docket Entry No. 24, ¶ 14.4). Although more facts are alleged with respect to Shah, including that she "told the alleged victims to lie under oath, coerced other witnesses to lie under oath, and attempted to and did mislead the Judge concerning the validity of the DNA evidence, and tampered with Defense witnesses in an attempt to force them to change their statements about the events and/or to absence themselves from the proceedings," (*id.,* ¶ 14.5), absolute immunity nonetheless applies. "The conduct [George] describes may be egregious, but it falls within the scope of [Shah]'s prosecutorial immunity." *Harvey,* 2012 WL 1551337, at *10. Even reading the amended complaint as sufficiently alleging that Shah, McFaden, and Kahle were motivated by racial discrimination against George, who is African–American, when they prosecuted him for sexually assaulting L.B., who is Caucasian, and when McFaden and Kahle used falsified evidence against

him at the trial, immunity applies to require dismissal. "Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and carrying the case through the judicial process .... even if the prosecutor is accused of knowingly using perjured testimony." *Boyd,* 31 F.3d at 285. The Prosecutor Defendants are entitled to prosecutorial immunity on all of the § 1983 claims.

**\*16** The § 1983 claims against Harris County and Fort Bend County also fail as a matter of law. George largely seeks to hold the counties liable for the acts of their employees, the Prosecutor Defendants (and perhaps a Harris County detective). "But, under § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal quotation marks, citations, and emphasis omitted). "In order to hold a municipality liable under § 1983 for the misconduct of one of its employees, a plaintiff must allege that the municipality caused the constitutional violation through its policies or customs." *Kohler v. Englade,* 470 F.3d 1104, 1115 (5th Cir.2006) (citing *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[A] plaintiff may not infer a policy 'merely because harm resulted from some interaction with a government entity,' and instead must identify the policy or custom that caused the violation." *Batiste v. Theriot,* 458 F. App'x 351, 358 (5th Cir.2012) (per curiam) (quoting *Colle v. Brazos Cnty., Tex.,* 981 F.2d 237, 245 (5th Cir.1993)).

George has not pleaded facts that could support an inference of an unconstitutional policy or custom. "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Id.* (quoting *Spiller v. City of Tex., Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997)). To the extent that George alleges that Harris County and Fort Bend County maintained policies of falsely imprisoning defendants and maliciously prosecuting them, because of their race, the allegations in his complaint are conclusory. (*See, e.g.,* Docket Entry No. 24, ¶¶ 8.3, 10.3, 14.3–14.4). George's repeated failure to describe the policy or custom with the necessary specificity requires the dismissal of the § 1983 claims against the counties. [10] *See Batiste,* 458 F. App'x at 358; *see also Henderson v. Anderson,* 463 F. App'x 247, 250 (5th Cir.2012) (per curiam) ("Aside from their conclusory

allegations, the [plaintiffs] did little to factually detail the policy or custom they claimed was involved and how the particular injury was incurred because of the execution of that policy."). Moreover, George's factual allegations relating to a policy or custom relate only to what happened to him, in one case handled separately to him in two different counties. "Even if [those allegations] were true, [George] fail[s] to show that this is a continuing or repeated failure and the Supreme Court has held that a single incident, standing alone, is usually insufficient as a matter of law to establish" municipal liability. *Batiste,* 458 F. App'x at 358 (citing *Connick,* 131 S.Ct. at 1361–62).

Finally, Harris County and Fort Bend County are entitled to dismissal of three of George's claims—his § 1983 claims and his state-law malicious-prosecution claim—on an additional ground. George has sued the wrong party. These claims arise directly out of the criminal prosecutions against him. As this court noted in the earlier memorandum and opinion issued in this case, "[t]he prosecutorial actions alleged in the complaint are those of the State of Texas, not Harris County," and " 'Texas law makes clear ... that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." (Docket Entry No. 20, at 4 (quoting *Esteves,* 106 F.3d at 678). "Consequently, the Fifth Circuit said, counties cannot be held liable for the actions of a district attorney engaged in a criminal prosecution." *Davis v. TDCJ,* Civ. A. No. 5:08cv166, 2009 WL 2601443, at *6 (E.D.Tex. Aug.20, 2009) (citing *Esteves,* 106 F.3d at 678); *see also Mowbray v. Cameron Cnty., Tex.,* 274 F.3d 269, 278 (5th Cir.2001) (holding that a county cannot be liable under § 1983 for failure to train the county's attorneys because those attorneys were state officers). And to the extent George seeks to sue Harris County based on a policy or custom to seek writs of attachment in ways that violate the Texas Family Code, George again has sued the wrong party. [11] The Texas Family Code states specifically that it is "[t]he juvenile court" that is to provide notice of the intent to certify the juvenile as an adult. TEX. FAM.CODE § 53.06(a). Any claim George might assert based on the juvenile court's failure to provide the statutory notice is against the State of Texas, not against the counties. *See Guerrero v. Refugio Cnty.,* 946 S.W.2d 558, 568 (Tex.App.-Corpus Christi 1997) (explaining that a state district-court judge was acting as a state agent "when he is enforcing state law or state policy" and as a "county agent when he

enforces county policy or law") (citing *Echols v. Parker,* 909 F.2d 795, 801 (5th Cir.1990)), *overruled on other grounds by NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 146–47 (Tex.1999). George's municipal-liability claims arising from his prosecution are against the State of Texas, providing an additional reason to dismiss those claims.

### 3. The § 1985 Claims

*17 George has also asserted § 1985 claims against the defendants for conspiring to falsely imprison him and to discriminate against him based on his race. "A single legal entity, such as the City of Houston and its employees, is incapable of conspiring with itself for the purposes of § 1985." *Hill v. City of Houston,* 991 F.Supp. 847, 851 (S.D.Tex.1998) (citing *Baldwin v. Univ. of Tex. Med. Branch at Galveston,* 945 F.Supp. 1022, (S.D.Tex.1996), *aff'd,* 122 F.3d 1066 (5th Cir.1997); and *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994)); *accord Britt v. Jackson Cnty., Miss.,* No. 1:11–cv–00074– HSO–JMR, 2012 WL 2460534, at *8 (S.D.Miss. June 27, 2012); *Washburn v. Texas,* No. A–07–CA–116 LY, 2008 WL 3243880, at *4 (W.D.Tex. Aug.6, 2008); *Rollerson v. Gonzalez,* Civ. A. No. G–06–CV–246, 2007 WL 1729643, at *4 (S.D.Tex. June 13, 2007). "[A] governmental body cannot conspire with itself and the individual members of the body[.]" *Suttles v. U.S. Postal Serv.,* 927 F.Supp. 990, 1002 (S.D.Tex.1996). George's § 1985 claims allege that Harris County conspired with McFaden and Kahle, and Fort Bend County conspired with Shah. The intracorporate-conspiracy doctrine bars George's § 1985

Moreover, for the reasons stated in detail above, George has failed to state a claim for a violation of his legal rights. He cannot maintain a conspiracy claim without an underlying legal violation. [12] *See, e.g., Britt,* 2012 WL 2460534, at *8 ("If the underlying claim fails, then the section 1985 claim also fails." (citing *Mich. Prot. & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 348 (6th Cir.1994)).

### 4. The Class–Action Allegations

George "seeks to certify a class pursuant to FRCP 23(b) (3) as to claims presented in Plaintiff's First Amended Complaint against Defendant, Harris County relating to the pattern and/or practice of Harris County failing to, over the course of many years, serve juvenile defendants[.]" (Docket Entry No. 33, ¶ 1). George has not

moved to certify the class. [13] There appears to be only one claim asserted on behalf of the purported class, a false-imprisonment claim based on alleged unlawful writs of attachment. George's individual false-imprisonment claim against Harris County is the same as that of the class. George's false-imprisonment claim (and his other claims) have been dismissed, with prejudice. "The present suit is therefore an improper vehicle through which to litigate any claims of the putative class. Because class certification was not presented to the court," dismissal of George's lawsuit in its entirety is appropriate. *Lewis v. Auto Club Family Ins. Co.,* Civ. A. No. 11–169–JJB, 2012 WL 243739, at *7 (M.D.La. Jan.25, 2012); *see also Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1297 (11th Cir.2005) ("Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."). Additionally, because the court has dismissed all of George's claims, there is no class representative. *See Miller v. Wash. Cnty.,* 650 F.Supp.2d 1113, 1120 (D.Or.2009). Because this case has been dismissed before certification, the court's dismissal and grant of summary judgment are not binding on other members of the putative class. *See Moore v. State Farm Fire & Cas. Co.,* 556 F.3d 264, 266 n. 1 (5th Cir.2009) ("[A]ny precertification decision, although persuasive with regard to the claims of any other members of the putative class, binds only the named plaintiffs."); *Casas v. Am. Airlines, Inc.,* 304 F.3d 517, 526 n. 12 (5th Cir.2002) ("Our decision in favor of American on Casas's individual claims will have no res judicata effect on the class members' claims, although it will, of course, have stare decisis effect.").

### F. Summary

**\*18** George's claims against the defendants fail as a matter of law. As to Harris County, though George has failed to state a claim against it as a matter of law, he also has not presented competent summary-judgment evidence creating a genuine factual dispute on any of the claims. Harris County is entitled to summary judgment as well as dismissal; Fort Bend County and the Prosecutor Defendants are entitled to dismissal for failure to state a claim.

The amended complaint is dismissed, with prejudice and without leave to amend. George was previously given leave to amend to correct the pleading deficiencies and failed to do so. As previously explained, allowing George to amend again nearly two years after the suit has been filed, and after discovery has closed, would unduly prejudice the defendants. Finally, further amendment would be futile: the proposed second amended complaint George filed, even if it was considered, would not lead to a contrary conclusion on any of the causes of action. George's claims are dismissed against all defendants, with prejudice. George's remaining motions are denied as moot. [14]

### IV. Conclusion

The court has made the following rulings:

- Harris County's motion to enlarge page limits, (Docket Entry No. 51), is granted.

- George's motion for leave to file a second amended complaint, (Docket Entry No. 48, Ex. B), is denied.

- George's motion for leave to file an untimely response to the motion to dismiss, (Docket Entry No. 67), is denied.

- Fort Bend County and Shah's motion to dismiss, (Docket Entry No. 53), is granted, with prejudice and without leave to amend.

- McFaden and Kahle's motion to dismiss, (Docket Entry Nos. 55–56), is granted, with prejudice and without leave to amend.

- Harris County's motion for summary judgment, (Docket Entry No. 52), is granted.

- George's remaining motions, (Docket Entry Nos. 40, 44), are denied as moot.

This case is dismissed. Final judgment is entered by separate order.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 2744332

Footnotes

1   The amended complaint either misspells or misidentifies the Prosecutor Defendants' names. The court uses the correct identification, and corrects the caption accordingly.

2   George also states that he is pursuing claims under 42 U.S.C. §§ 1986 and 1988, (Docket Entry No. 24, at 1), but the amended complaint is devoid of any such claims.

3   Without seeking leave, George has filed a summary-judgment response exceeding the court's 25–page limit. *See* Court Procedures 6(A). The filing of the brief is treated as seeking leave to file an enlarged brief, which is granted.

4   The court has arrived at these rulings without considering the statements of George's counsel of record made at the August 2011 hearing. Counsel's statements at that hearing do not affect the defendants' entitlement to dismissal of this case.

5   A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir.2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility. *Id.* (internal quotation marks omitted).

6   It is also unclear from the complaint whether George's claims against Fort Bend County and Shah arise from the charges relating to the alleged assault of L.B. or to the alleged assault of C.N. (*Compare* Docket Entry No. 24, ¶ 6.2 (discussing the prosecution in Fort Bend County for the alleged assault of L.B.), *with id.,* ¶ 7.2 (discussing George being charged in Fort Bend County with sexual assault for the alleged assault of C.N.)). The analysis, however, is unaffected by which alleged assault these claims relate to.

7   Section 1985 claims in Texas are subject to a two-year statute of limitations. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 n. 10 (5th Cir.1996); *Dunkins v. Schattman,* Civ. A. No. 4:06–CV–723–Y, 2007 WL 720267, at *2 (N.D.Tex. Mar.9, 2007). The following analysis as to the timeliness of George's § 1983 claims applies to the timeliness of his § 1985 claims as well.

8   George attempts to circumvent the Texas Tort Claims Act by arguing in his response to the summary-judgment motion that "in all of Plaintiff's allegations, Plaintiffs specifically pled the applicability of 42 U.S.C.A. §§ 1983 and 1985[.]" (Docket Entry No. 64, at 15). That does not address whether the state-law claims are subject to governmental immunity under state law. Additionally, the court has already explained the proper characterization of George's claims.

9   The amended complaint does not contain factual allegations that the Prosecutor Defendants were personally involved in or responsible for the assaults on George in the Fort Bend County and Harris County jails. The Prosecutor Defendants are entitled to the dismissal of the assault-and-battery claims on this basis as well.

10  In addition, as to Harris County, George has presented no summary-judgment evidence of any such policy.

11  In addition to suing the incorrect party, there are no factual allegations in the amended complaint of a Harris County policy or custom to seek writs of attachment in ways that violate the Texas Family Code. (*See* Docket Entry No. 24, ¶¶ 8.1–10.3).

12  This reason also requires dismissal of the § 1983 claims against Fort Bend County and Harris County. To establish municipal liability, there must be an underlying constitutional violation. *See James v. Harris Cnty.,* 577 F.3d 612, 617 (5th Cir.2009).

13  Even had George done so, the court would have granted the motions to dismiss and for summary judgment instead of ruling on the certification motion. *See Whiting v. Kelly,* 255 F. App'x 896, 900 (5th Cir.2007) (per curiam) ("The district court's failure to revisit the class certification issue prior to granting summary judgment was not an abuse of discretion because the grant of summary judgment for the defendants terminated the suit on the merits." (citing *Floyd v. Bowen,* 833 F.2d 529, 534–35 (5th Cir.1987))).

14  As previously stated, the August 2011 hearing, and Ms. George–Baunchand's statements at that hearing, do not affect the defendants' entitlement to dismissal of this lawsuit.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.