IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALFRED DEWAYNE BROWN. <br><br> **Plaintiff,** <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, <br> HARRIS COUNTY, TEXAS, <br> KIM OGG, *in her official capacity*, <br> BRECK MCDANIEL, <br> TED C. BLOYD, AND <br> D.L. ROBERTSON, <br><br> **Defendants.** | Civil Action No. 4:17-CV-01749 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS HARRIS COUNTY
AND KIM OGG's MOTION FOR RECONSIDERATION AND
<u>FRCP RULE 12(b)(1) MOTION TO DISMISS</u>**

Over five months ago, Defendants Harris County and Kim Ogg filed a motion to dismiss that raised all the issues presented in their instant motion. That motion was fully briefed, oral argument was held, and the Court carefully considered each issue. Defendants now want a second bite at the apple. However, they entirely fail to demonstrate why reconsideration is appropriate, as their Motion simply rehashes old arguments already thoroughly weighed by this Court and provides no persuasive reason that Defendants believe the Court erred in its decision. Moreover, pursuant to well-settled municipal liability principles and Article III standing jurisprudence, Defendants Harris County and Kim Ogg can and should be held liable for the deeply unconstitutional

1

policies, customs and practices alleged in Mr. Brown's Complaint. For these reasons, further detailed *infra*, Defendants' Motion for Reconsideration and Fed. R. Civ. P. 12(b)(1) Motion to Dismiss should be denied.

## BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Alfred Dewayne Brown was wrongfully convicted of the tragic homicide of Officer Charles Clark, which occurred during the robbery of an Ace Check Cashing store in South Houston on April 3, 2003. (Compl. ¶ 32.) Alfredia Jones, the store clerk, was also shot and killed. (Compl. ¶¶ 38-40.) During the initial investigation into the murder, Mr. Brown immediately provided an alibi—that he was at the home of his girlfriend, Ericka Dockery, at the time of the murders. (Compl. ¶¶ 83-89.) This was corroborated by witness statements from Ms. Dockery and her cousin, Reginald Jones. (Compl. ¶¶ 86, 112-119.) In April or May 2003, months before Mr. Brown was indicted, the prosecution received phone records that provided documentary proof of Mr. Brown's alibi, placing him at Ms. Dockery's home and not at the scene of the crime. (Compl. ¶¶ 126-137.) These records, which had been reviewed at the time, were withheld from Mr. Brown's defense team and were "found" in the garage of Defendant McDaniel, a Houston Police Department homicide detective, ten years later. (Compl. ¶¶ 126-127.) Meanwhile, Ms. Dockery was coerced—with criminal charges, and the threat of losing her children—into changing her story. (Compl. ¶¶ 90-112.) A number of other coercive tactics, including bribery and threats of criminal prosecution, plagued the statements and testimony of witnesses and promising leads to alternative suspects were intentionally ignored. (Compl. ¶¶ 44-63, 83-119.) No one from the District Attorney's Office,

including lead prosecutor Daniel Rizzo, received any reprimand for their unconstitutional actions. (Compl. ¶¶ 64-82.)

Based on perjured and coerced testimony, Mr. Brown was indicted on June 18, 2003, was convicted of capital murder on October 18, 2005, and was sentenced to the death penalty on October 25, 2005. (Compl. ¶ 24.) On November 5, 2014, the Texas Court of Criminal Appeals issued an order vacating Mr. Brown's conviction and sentence, and remanded the case to the trial court for "a new trial or other proceeding consistent with this opinion." On June 8, 2015, the Harris County District Attorney moved to dismiss the case against Mr. Brown for insufficient evidence, which the District Court granted. (Compl. ¶ 140.) Later that day, Mr. Brown was released from custody. (Compl. ¶ 141.)

Plaintiff filed his Complaint on June 8, 2017, asserting claims *inter alia*, against Harris County and Kim Ogg (in her official capacity) under 42 U.S.C. § 1983 for unconstitutional policies, customs and practices. (Dkt. No. 1.) Defendants Kim Ogg (in her official capacity), the current Harris County District Attorney, and Harris County filed a motion to dismiss, and in the alternative for a more definite statement, on September 5, 2017. (Dkt. No. 9.) The Court heard oral argument on these motions on December 1, 2017 (Dkt. No. 38). On December 26, 2017, the Court issued a Memorandum and Opinion granting in part and denying in part the motions. (Dkt. No. 39.) The Court dismissed with prejudice claims against Harris County and Kim Ogg based on failures to adequately train in *Brady* obligations. (Dkt. No. 39.) The Court dismissed without prejudice, and with leave to amend, claims against Defendant Daniel

Rizzo, the Assistant District Attorney who prosecuted Mr. Brown's case, and claims against Harris County and Kim Ogg based on Mr. Rizzo's conduct. (Dkt. No. 39.) The Court allowed claims against Harris County and Kim Ogg for unconstitutional customs, policies and practices to proceed.[1] (Dkt. No. 39.)

On January 5, 2018, the Court issued a protective order governing confidential materials exchanged in this case, and on January 8, 2018, the Court issued a scheduling order. (Dkt. Nos. 40-42.) On January 10, 2018, Plaintiff served Defendants Harris County and Kim Ogg with written discovery requests and that same day Defendants filed a Joint Answer. (Dkt. No. 43.) On January 23, 2018, Defendants Harris County and Kim Ogg filed the instant motion. (Dkt. No. 46.)

## DEFENDANTS' MOTION FOR RECONSIDERATION

**I.    Legal Standard**

A motion for reconsideration of a non-final order is governed by Federal Rule of Civil Procedure 54(b). This Court has held that "Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders." *T-M Vacuum Prod., Inc. v. TAISC, Inc.*, No. CIV. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008)(Rosenthal, J.), *aff'd sub nom. T-M Vacuum Prod. v. Taisc, Inc.*, 336 F. App'x 441 (5th Cir. 2009). Because granting a motion for reconsideration "is an extraordinary remedy," that exacting standard favors denial of such motions. *Veldekens v. GE HFS*

---

[1] The Court also allowed claims against the City of Houston for unconstitutional customs, policies and practices, and claims against the individual Houston police officers to go forward, and dismissed without prejudice claims against the City of Houston based on ratification of the conduct of its officers. (Dkt. No. 39.)

*Holdings, Inc.,* No. CIV. H-06-3296, 2009 WL 10693904, at *4 (S.D. Tex. Aug. 3, 2009) (Rosenthal, J.).

"A Rule 59(e) motion is not a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Baldwin v. Layton,* 300 F. App'x 321, 323-24 (5th Cir. 2008)(quoting *Templet v. HydroChem Inc.,* 367 F.3d 473, 479 (5th Cir. 2004)). Accordingly, "[l]ike a motion under Rule 59(e), a motion to reconsider may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before the entry of the judgment or order." *T-M Vacuum Prod.,* 2008 WL 2785636, at *2; *see also DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2017 WL 3484507, at *2 (S.D. Tex. Aug. 14, 2017)("the fact that the Court retains the power to revise interlocutory orders does not give parties the right to continuously revisit the same issues").

The clear policy "discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time," exists because they "reduce judicial efficiency and give parties no incentive to raise all relevant arguments at first consideration of an issue." *DAC Surgical Partners P.A.,* 2017 WL 3484507, at *2. Motions for reconsideration thus serve the "'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Brown v. Baylor Healthcare Sys.*, No. CIV. H-08-0372, 2009 WL 1342933, at *2 (S.D. Tex. May 11, 2009)(quoting *Baldwin v. Layton,* 300 F. App'x 321, 323-2 (5th

5

Cir. 2008))(Rosenthal, J.). The Court's discretion to grant motions for reconsideration under 54(b) "must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Tolleson v. Livingston*, No. 2:12-CV-201, 2014 WL 1386319, at *2 (S.D. Tex. Apr. 9, 2014)(citing *Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1414-15 (5th Cir. 1993)).

II. **Defendants' Motion Simply Rehashes Old Arguments That This Court Has Already Considered.**

Defendants' Motion asks the Court to revisit arguments that they have already made and this Court has already evaluated. Even the "novel" argument that Mr. Brown lacks standing to bring his claim against Harris County is an old argument masquerading as an objection to Mr. Brown's standing under Fed. R. Civ. P. 12(b)(1). Harris County essentially argues that the Court erred because its ruling conflicts with two cases, both of which the County presented to the Court in its original motion and addressed at oral argument. Not only does Plaintiff flatly disagree that the Court erred, for the reasons explained below, but he also submits that Defendants fail to bring any arguments that make reconsideration appropriate. Motions for reconsideration are designed for the "narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Baldwin,* 300 F. App'x at 323-2. Defendants' Motion does neither.

III. **The Court Properly Held That Harris County Can Be Liable For The Customs, Policies and Practices Of Its District Attorney Under *Monell*.**

The Court's December 26, 2017 Memorandum and Opinion held that Harris County can be held liable under a *Monell* theory of liability, and that Plaintiff sufficiently

6

alleges the elements of a municipal liability claim against the County to proceed to discovery. (Dkt. No. 39 at 21-24.) Indeed, it is well settled that "local governing bodies (and local officials sued in their official capacities) can… be sued directly under § 1983" if the unconstitutional action stems from "a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978).

Defendants erroneously assert that the Court's decision in this case conflicts with its prior opinion in *Bellamy v. Harris County, Texas*, CV H-16-02925, 2017 WL 2080157 (S.D. Tex. May 15, 2017). Defendants raised this very argument in its original motion to dismiss and at oral argument before the Court. (Tr. Mot. To Dismiss Hr'g. 21:18-22:15.) The argument remains unavailing. The holdings in *Bellamy* are inapposite here, as *Bellamy* vastly differs from the instant case, both factually and in the legal claims as pled. In *Bellamy*, the plaintiffs did not bring *Monell* claims against District Attorney Anderson, but rather relied on the District Attorney's direct actions and inactions related to the trial of their criminal case. The Court's analysis, including its application of *Van de Camp v. Goldstein*, 555 U.S. 335, 344 (2009)[2], hinged on this very fact. Indeed, the Court recognized that the *Bellamy* plaintiffs made "only a brief and nonspecific allegation that 'Harris County engaged in a wide-spread custom or practice' of various civil rights violations…." *Id.* at *2. The *Bellamy* complaint contained no specific allegations

---

[2] *Van de Camp* involved the liability of a supervising attorney for failures to train and inadequate supervision, not *Monell* claims based on widespread policies like those at issue here.

7

regarding the policies of the District Attorney's office, and was sparse on any factual allegations that would support a *Monell* claim.

In contrast, Mr. Brown has alleged that Defendants Harris County and Ogg adopted a conviction culture and "do whatever it takes" policy that encouraged Assistant District Attorneys to ignore constitutional protections. Indeed, the Court correctly found that Mr. Brown's complaint met the pleading criteria to hold the County liable under § 1983: (1) a constitutional violation, (2) an official policy, (3) promulgated by the County's policymaker, and (4) the policy was "the moving force behind, or actual cause of, the constitutional injury." (Dkt. No. 39 at 21)(citing *James v. Harris Cty*, 577 F.3d 612, 617 (5th Cir. 2009)). Defendants' instant Motion does not dispute that Mr. Brown has pled facts sufficient to meet these elements. Mr. Brown has stated that Harris County's "do whatever it takes" culture constitutes a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984)(en banc). Moreover, Mr. Brown has specifically alleged that Defendant Ogg, and her predecessors in office, constituted final policymakers for Harris County. Indeed, Texas courts have consistently recognized that a county can be liable for a district attorney's acts as a "final policymaker" for the county. *Estrada v. Healey*, No. CV H-15-0092, 2015 WL 13158514, at *10 (S.D. Tex. June 4, 2015)(citing *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001)). Notably, Mr. Brown's allegations concern an overarching policy in the District Attorney's Office that permeates each function of the office,

8

including the administrative and investigative functions.

Defendants have cited no case, and Plaintiff has found none, holding that a county cannot be held liable for sufficiently-pled municipal policy claims like those at issue here. Moreover, as the Court recognized, Defendants possess "unique information and knowledge" about these policies, practices, and customs, such that Rule 11 allows Mr. Brown to proceed to discovery. (Dkt. No. 39 at 23.) For all these reasons, the Court did not err in allowing Mr. Brown's municipal claims against the County to proceed, and Defendants' Motion should be denied.

## IV. The Court Properly Held That Harris County Is The Proper Party To Answer The *Monell* Claims Against It.

Defendants' second argument for reconsideration—that the State of Texas, not Harris County is the appropriate party to this suit—again rehashes arguments from their motion to dismiss and again misses the mark. Defendants Harris County and Ogg ignore the critical fact that Mr. Brown's claims against them are based on a *Monell* theory of liability.

Defendants misplace their reliance on two cases, both of which are inapposite, summary judgment cases and neither of which pertain to *Monell* claims. First, Defendants cite *George v. Harris County, Texas*, CV H-10-3235, 2012 WL 2744332 (S.D.Tex. July 9, 2012)(Rosenthal, J.), for the proposition that Plaintiff must bring his claim against the State. To the contrary, however, in *George* this Court made clear that it would consider a municipal liability theory against Harris County, but that George had not made sufficient allegations to make out such a claim. "George has not pleaded facts

9

that could support an inference of an unconstitutional policy or custom…George's repeated failure to describe the policy or custom with the necessary specificity requires the dismissal of the 1983 claims against the counties." *Id*. at *16. Contrary to Defendants' Motion, then, this Court's ruling in the instant case is entirely consistent with its opinion in *George*. The Court examined Mr. Brown's allegations under the same microscope, but simply came to the opposite conclusion—that Mr. Brown had made sufficient allegations to assert a *Monell* claim at this stage in the litigation.

Similarly, Defendants erroneously argue that *Doe v. Harris County, Texas*, CIV. H-16-2133, 2017 WL 4402590 (S.D.Tex. Sept. 29, 2017)(Lake, J.), requires the conclusion that Harris County is the wrong party in this case.[3] The claims presented by the *Doe* plaintiff, however, essentially rested on a ratification theory of liability for the District Attorney. Doe argued that the District Attorney ratified the unconstitutional acts of the Assistant District Attorney, by permitting such actions and by public remarks later made by the District Attorney. The *Doe* court thus determined that the County cannot be held liable for ratifying the unconstitutional acts of a prosecutor taken for the trial of a state law criminal case. *Id.* at *24 ("even if as plaintiff alleges, Socias' actions <u>were ratified</u> by then Harris County District Attorney Devon Anderson, Harris County cannot be held liable….")(emphasis added). That reasoning is simply not applicable to the claims advanced by Mr. Brown, which assert that Harris County and Kim Ogg instituted an independent "whatever it takes" policy that served as the seed for festering

---

[3] This case was also discussed at oral argument of the County's original motion to dismiss. (Tr. Mot. To Dismiss 12:2-13:5.)

constitutional violations throughout the Harris County District Attorney's office.

### **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1)**

**I.  Legal Standard**

The Court should grant a 12(b)(1) motion for lack of subject matter jurisdiction only when "the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Where a motion to dismiss under Rule 12(b)(1) is based on the face of the complaint, the court must take as true the allegations in plaintiff's complaint. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). An attack is "facial" when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

The party asserting that subject matter exists must bear the burden of proof for a 12(b)(1) motion. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 578 (S.D. Tex. 2014). However, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998)).

**II.  Plaintiff Clearly Has Standing To Bring This Case, As He Suffered An Injury-In-Fact Caused By Harris County's Unconstitutional Policies, Customs and Practices.**

Defendants' final argument is simply a novel way of raising the same issue. Defendants again argue that Mr. Brown cannot sue Harris County because the Harris

11

County District Attorney is an entity of the State of Texas when pursuing criminal prosecutions.[4] This is yet another argument that was made in Defendants' initial motion to dismiss, although they now attempt to shoehorn that argument into an objection to Mr. Brown's standing under Fed. R. Civ. P. 12(b)(1). The basis for grounding this argument in standing law remains a bit opaque, but appears to focus on the causation element of standing. Defendants' 12(b)(1) motion should fail for several reasons.

First, Mr. Brown has clearly met the elements of standing, under any reasonable interpretation of our constitutional jurisprudence. For a plaintiff to establish Article III standing, he must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). The injury-in-fact element is the "first and foremost" element in the standing analysis. *Id*. Mr. Brown plainly alleges an injury-in-fact: he was wrongfully convicted for a murder that he did not commit, was imprisoned for twelve years, and spent ten years on death row waiting to be executed. The third element is also indisputably met—a favorable judicial decision in this case will result in monetary compensation for Mr. Brown to compensate him for these injuries. While money is a poor substitute for the years he spent in jail staring down the death penalty, it is the only redress now available to him.

---

[4] This argument apparently pertains only to Defendant Harris County, and not to Defendant Ogg, in her capacity as Harris County District Attorney. Defendants argue that the causation element of standing has not been met "against Harris County" because the County "does not have control over the Harris County District Attorney's actions…." (Dkt. No. 46 at 11.)

Defendants appear only to dispute that Mr. Brown has met the second element of standing—that his injury is "fairly traceable" to Defendants' actions. In so doing, they speciously aver that "Plaintiff cannot establish a 'causal connection' between the complained of conduct and his injuries." (Dkt. No. 46 at 11.) Notably, Defendants' actions need not be "the very last step in the chain of causation" to establish this element of standing. *Bennett v. Spear,* 520 U.S. 154, 168, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). An injury is "fairly traceable" to the defendant if the injury was "produced by determinate or coercive effect" by Defendants "upon the action of someone else." *Bennett,* 520 U.S. at 169. Mr. Brown clearly satisfies this element, as he alleges that Harris County's unconstitutional "do whatever it takes" policies, practices and customs were the moving force behind his wrongful conviction, imprisonment, and almost his death.

Second, Defendants' argument again ignores the fact that Mr. Brown's claims are based on the independent policies, customs and practices instituted by Harris County and its District Attorney. For all for the reasons stated above, the law permits these claims against the County. Indeed, Defendant Ogg, and her predecessors in office, constituted final policymakers for Harris County. Texas counties can be held liable for the customs, policies and practices of a district attorney, when she acts as a "final policymaker" for the county. *Estrada v. Healey*, 2015 WL 13158514, at *10 (citing *Lyford*, 243 F.3d at 192).

Third, Defendants cite no law (and Plaintiff could find none) supporting the proposition that a claimant, such as Mr. Brown, with an actual injury due to policies enacted by a County's District Attorney lacks standing to sue the County. To the

13

contrary, Texas courts have routinely determined that *Monell* claims against a County are appropriate, even when otherwise analyzing the issue of Article III standing. *See Richardson v. Sweet*, No. 3:17-CV-504-D-BN, 2017 WL 1476304, at *3 (N.D. Tex. Mar. 7, 2017)(dismissing § 1983 claims for lack of standing because plaintiff failed to state an actual injury, but doing so without prejudice to refile claims based on policies and practices against the county).

Moreover, courts within this district have refused to allow municipalities to escape § 1983 *Monell* liability on the grounds that they "lack control" over the actions of another governmental entity where the defendant entity "consistently participated" in the "alleged conduct with full knowledge of the constitutional implications." *Hernandez v. City of Houston*, No. 4:16-CV-3577, 2017 WL 2463636, at *5 (S.D. Tex. June 6, 2017)(holding that "[t]he City becomes an agent for Harris County and/or an 'aider and abetter' in Harris County's unconstitutional conduct… because the City has consistently participated in Harris County's alleged conduct with full knowledge of the constitutional implications; yet, over the years has failed to demonstrate governance over its own affairs and the City's separate duty to comply with federal law," which "demonstrates a course of conduct that may be determined as callous to the plaintiffs' alleged violations").

Accordingly, as the unconstitutional customs, policies and practices of the Harris County District Attorney and Harris County were the moving force behind Mr. Brown's injuries—his wrongful murder conviction, 12-year imprisonment and decade on death row—he clearly has standing to bring suit against the County. Indeed, Harris County

should be held accountable for these policies, which blatantly run roughshod over the constitutional rights of individuals like Mr. Brown.

## CONCLUSION

The Court did not err in its thorough, well-reasoned December 26, 2017 Memorandum and Opinion, and Defendants' Motion does nothing more than rehash the arguments made in their original motion to dismiss. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Reconsideration and 12(b)(1) Motion to Dismiss.

Date: February 12, 2018　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　EDWARDS KIRBY

　　　　　　　　　　　　　　　　　By: _/s/ Catharine E. Edwards_
　　　　　　　　　　　　　　　　　　　Catharine E. Edwards
　　　　　　　　　　　　　　　　　　California Bar No. 304137
　　　　　　　　　　　　　　　　3201 Glenwood Avenue, Suite 100
　　　　　　　　　　　　　　　　Raleigh, North Carolina 27612
　　　　　　　　　　　　　　　　　　(919) 780-5400 Telephone
　　　　　　　　　　　　　　　　　　(919) 800-3099 Facsimile
　　　　　　　　　　　　　E-Mail: cedwards@edwardskirby.com
　　　　　　　　　　　　　　　　　　*Admitted *Pro Hac Vice*

　　　　　　　　　　　　　　　　　　　　　　　　　　　LECLAIRRYAN
　　　　　　　　　　　　　　　　　　　　　　　　By: /s/ David Brill
　　　　　　　　　　　　　　　　　　　　　　　　　　　David Brill
　　　　　　　　　　　　　　　　　　　Texas State Bar No. 02993800
　　　　　　　　　　　　　　　　　　Southern District Bar No. 83566
　　　　　　　　　　　　　　　　1233 West Loop South, Suite 1000
　　　　　　　　　　　　　　　　　　　Houston, Texas 77027
　　　　　　　　　　　　　　　　　　(713) 752-8313 Telephone
　　　　　　　　　　　　　　　　　　(713) 650-0027 Facsimile
　　　　　　　　　　　　　E-Mail: david.brill@leclairryan.com

　　　　　　　　　　　　　　　　　ATTORNEYS-IN-CHARGE FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

    I certify that on the 12th day of February, 2018 a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF System and served by electronic notice to all parties of record.

By: _/s/ Catharine E. Edwards_
Catharine E. Edwards