IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFRED DEWAYNE BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-17-1749 |
| | § | |
| CITY OF HOUSTON, TEXAS, *et al.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION DENYING MOTION FOR RECONSIDERATION**

Harris County asks this court to reconsider its ruling denying the County's motion to dismiss Alfred Dewayne Brown's § 1983 claims based on a municipal-liability theory. For the reasons stated below, the County's motion for reconsideration is denied.

**I.     Background**

Brown sued the City of Houston, Harris County, current Harris County District Attorney Kim Ogg, and Houston Police Department Detective Breck McDaniel and Officers Tim Bloyd and D.L. Robertson, asserting § 1983 claims. Brown alleged constitutional violations in his prosecution and conviction, including egregious *Brady* violations, for capital murder. He seeks damages for the 12 years he spent in prison, on death row.

The defendants moved to dismiss. After extensive briefing and oral argument, the court issued its ruling in December 2017. (Docket Entry No. 39). The parties are familiar with the facts of this case, which are detailed in that opinion and need not be repeated here.

In its December 2017 Memorandum and Opinion, the court granted in part and denied in part the motion to dismiss as to Harris County and Kim Ogg. (Docket Entry No. 39 at 43). The court

1

determined that Brown alleged sufficient facts to state a claim against Harris County for unconstitutional policies, practices, or customs. The court dismissed, with prejudice, Brown's claim against Harris County for failure to train its employees in *Brady* obligations. The court also dismissed, without prejudice and with leave to amend, Brown's claim against the County based on the conduct of Harris County prosecutor Daniel Rizzo.

Harris County moves the court to reconsider the denial of the motion to dismiss Brown's claim for unconstitutional policies, practices, or customs. (Docket Entry No. 46). Harris County makes three arguments: (1) the County cannot be liable for the decisions of an independently elected district attorney; (2) the County is an improper party; and (3) Brown does not have standing to sue the County for the actions of a district attorney acting in an official, prosecutorial capacity. Brown's response argues that the County is rehashing the arguments the court heard, considered, and rejected. (Docket Entry No. 52).

## II. The Legal Standard For Reconsideration

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting FED. R. CIV. P. 54(b)) (per curiam). Brown notes that courts in this district have routinely applied a Rule 59(e) analysis to motions to reconsider interlocutory orders. But the Fifth Circuit's recent decision in *Austin* makes clear that Rule 54(b) and Rule 59(e) require distinct analyses. *Id.* (the district court abused its discretion in denying a motion to reconsider under the stricter Rule 59(e) analysis, when it should have applied the more flexible Rule 54(b) analysis); *see also Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp.*, 694 Fed. App'x 364 (5th Cir. 2017) ("Although the district court cited

to the correct rule, it incorrectly assumed that Rule 59 was sufficiently analogous that its standards apply by analogy and then proceeded to apply Rule 59 standards. The district court did not have the benefit of our opinion in *Austin* clarifying the difference between these standards.").

"Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). In contrast, the stricter Rule 59(e) applies only to the reconsideration of final judgments. The Fifth Circuit, adopting language from the D.C. Circuit, contrasted Rule 54(b) with Rule 59(e):

> Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered. . . . In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'

*Id.* (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). Because the County moves the court to reconsider the denial of its motion to dismiss—an interlocutory order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties [and] does not end the action as to any of the claims or parties"—the analysis is under Rule 54(b). FED. R. CIV. P. 54(b). "It is within the discretion of the court whether to grant a motion to reconsider an interlocutory order." *Deeds v. Whirlpool*, No. Civ. A. H-15-2208, 2017 U.S. Dist. LEXIS 127461, at *31 (S.D. Tex. Aug. 10, 2017).

### III. Analysis

#### A. Liability Against Harris County

Harris County argues that this court failed to follow its rulings in similar prior cases when

it found that Brown alleged sufficient facts to state a claim for § 1983 municipal liability against the County. The court disagrees.

The County first argues that the decision is inconsistent with this court's prior opinion in *Bellamy v. Harris County*, CV H-16-02925, 2017 WL 2080157 (S.D. Tex. May 15, 2017). According to Harris County, *Bellamy* precludes the arguments Brown raises to state a municipal-liability claim. Brown responds that *Bellamy* is factually and legally distinguishable.

In *Bellamy*, the plaintiffs alleged that police officers searched their car during a traffic stop and falsely claimed to find drugs and drug paraphernalia. Based on that search, Bellamy was arrested, detained, and charged with a criminal offense. The plaintiffs alleged that the District Attorney's office engaged in improper plea-bargaining tactics, including lying about the existence of inculpatory evidence to manipulate Bellamy into pleading guilty. The plaintiffs sued both District Attorney Devon Anderson and Harris County under § 1983. The court dismissed the claim against District Attorney Anderson based on the absolute prosecutorial immunity. The court rejected the plaintiffs' characterization of Anderson's actions as "administrative," finding that the complaint instead alleged "that District Attorney Anderson *herself* was the one who took various improper actions." *Bellamy*, 2017 WL 2080157, at *2 (emphasis added). The *Bellamy* plaintiffs asserted claims against Anderson for her individual actions, but they did not assert *Monell* claims against the County. The court noted that "[t]here is only a brief and nonspecific allegation that 'Harris County engaged in a wide-spread custom or practice' of various rights violations and that District Attorney Anderson implemented that policy.'" *Id.* The *Bellamy* plaintiffs conclusorily alleged a general County policy, but it was based on a single incident. The complaint did not assert a claim, must less sufficient facts, for *Monell* liability against the County, instead asserting claims only against

4

Anderson. By contrast, Brown alleged extensive facts describing the County-wide "do whatever it takes" to convict policy, practice, or custom, and he alleged facts showing the County's adoption and implementation with deliberate indifference to constitutional violations.

The County also points to the court's application in *Bellamy* of the Supreme Court decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), as foreclosing Brown's claims. In *Van de Kamp*, the Supreme Court considered "whether [prosecutorial] immunity extends to claims that the prosecution failed to disclose impeachment material . . . due to: (1) a failure to properly train prosecutors, (2) a failure to properly supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants." *Id.* at 339. The plaintiff in *Van de Kamp* sued under § 1983 after he was convicted based in part on false testimony from a jailhouse informant. The plaintiff sued the former Los Angeles County district attorney and the chief deputy district attorney under § 1983 for failing to communicate relevant information to his defense attorney, failing to adequately train or supervise the prosecutors on the case, and failing to establish an information system about informants. Unlike Brown, the plaintiff in *Van de Kamp* did not allege municipal liability under *Monell*. The Supreme Court's analysis focused instead on the liability of a supervising prosecutor for the actions of the trial prosecutor and for a general failure to train prosecutors in *Giglio* obligations. The issue in *Van de Kamp*, which this court discussed in *Bellamy*, was the potential contradiction in finding a trial prosecutor absolutely immune while simultaneously holding liable the supervisor who failed to supervise or train that prosecutor. Similar facts are not present here.

Harris County next argues that *George v. Harris County*, No. H-10-3235, 2012 WL 2744332 (S.D. Tex. July 9, 2012), is inconsistent with allowing Brown's municipal-liability claims against

5

Harris County. In *George*, the plaintiff sued two Texas counties and several prosecutors in those counties, alleging state and federal law violations. There, as here, the court found the individual prosecutors absolutely immune for actions taken in the scope of their prosecutorial duties. *Id.* at \*14. The court rejected George's attempt to hold Harris County liable for the prosecutors' actions and for the actions or failures of the juvenile court, which operated as an agent of the State of Texas, noting that a County district attorney prosecuting a case is acting as an agent of the State. The court also noted that although a county cannot be vicariously liable for its employees' actions, it can be liable for its own unconstitutional policies or customs that are the moving causing a constitutional violation. *Id.* at \*16. Based on the facts George alleged, the municipal-liability claims could not proceed against the County. In contrast to Brown, George failed to plead facts that could support a municipal-liability claim based on unconstitutional County policies or customs. Instead, George made conclusory statements about his own prosecution and about unconstitutional policies attributable only to the juvenile court. Brown, by contrast, alleged factual details about policies and customs that resulted in repeated constitutional violations. His complaint allegations state a *Monell* claim.

Finally, Harris County relies on *Doe v. Harris County*, No. H-16-2133, 2017 WL 4402590 (S.D. Tex. Sept. 29, 2017). In *Doe*, the plaintiff, a victim-witness, was taken into custody after breaking down while testifying during a criminal trial. Doe sued Harris County and two County employees—an Assistant District Attorney and a jail guard—alleging mistreatment and violations of her constitutional rights. The court dismissed the claims against the prosecutor individually based on absolute prosecutorial immunity. Doe alleged that the Harris County District Attorney and Sheriff ratified the County's preexisting unconstitutional policy or practice, in violation of Doe's

6

rights, and that the Assistant District Attorney acted in compliance with Harris County's ratified policy when he ordered her jailed. The court concluded that the Assistant District Attorney's actions were within his prosecutorial duties and were taken as an agent of the State of Texas. Harris County could not be liable for those actions, even if it had ratified them and Doe's allegations arose from the actions attributed to the prosecutor acting individually, not as a final policymaker for the County, but in the context of prosecuting a specific criminal case. The allegations here are different. Brown makes no allegations about Kim Ogg or her predecessors' actions in prosecuting his case. Instead, he alleges that the elected Harris County District Attorneys created, adopted, and implemented an unconstitutional policy, practice, or custom, in their capacities as final policymakers for the County, leading to his conviction.

As *Doe* illustrates, a County District Attorney's Office has a "hybrid nature," functioning as an arm of the State of Texas by enforcing State law and as a local entity. *See, e.g.*, *Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (discussing the state and local qualities of a county district attorney's office); *Carter v. City of Philadelphia*, 181 F.3d 339, 352 (3d Cir. 1999) (collecting cases); *see also Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) ("Texas law makes clear, however, that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted."); *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) ("A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy. It may be possible for the officer to wear both state and county hats at the same time, . . . but when a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official."). "The recurring theme that emerges from these cases is that

county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices." *Carter*, 181 F.3d at 352. "[A] county may only be held liable for acts of a district attorney when he 'functions as a final policymaker for the county.'" *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001) (quoting *Esteves*, 106 F.3d at 678). "[A] district attorney is not a policymaking official in the county when he acts in his prosecutorial capacity, because he is enforcing state rather than county law." *Jones v. Pillow*, No. 3:02-CV-1825-L, 2003 U.S. Dist. LEXIS 10859 (N.D. Tex. June 10, 2003) (citing *Brown*, 243 F.3d at 192).

The line between acting in a "prosecutorial capacity" and acting as a "final policymaker" is determined by state law and the facts of each case. "Whether an individual defendant is acting on behalf of the state or the local government is determined by state law and by an analysis of the duties alleged to have caused the constitutional violation." *Esteves*, 106 F.3d at 677. A "municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) (county liability was appropriate based on the plaintiff's allegations that the sheriff and the elected district attorney conspired to subject her to a "sham trial"). "When the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, county liability under *section 1983* must attach, provided that the other prerequisites for finding liability under that section are satisfied." *Id.* at 138 (emphasis in original); *cf. Andrade v. City of San Antonio*, 143 F. Supp. 2d 699, 725 (W.D. Tex. 2001) ("Generally, <u>final</u> policymakers include those local officials who, by virtue of state law, (1) hold virtually absolute sway over the particular tasks

8

or areas of responsibility entrusted to them and (2) are accountable to no one other than the voters for their conduct in those areas. Final policymakers are usually empowered by state law to 'define objectives and choose the means of achieving them' without supervision by any other governmental official.") (emphasis in original).

In *Brown v. Lyford*, 243 F.3d at 191, the plaintiff sought to hold a county liable for actions taken by Roland Lyford, a prosecutor pro tem prosecuting a single case. The plaintiff did "*not* contend that, apart from the role of Lyford, Upshur County had a policy of charging and arresting innocent people." (emphasis added). The plaintiff "made no showing that Lyford in some way beyond his role as a prosecutor pro tem functioned as the final policymaking authority for Upshur County. . . . Lyford as prosecutor pro tem stepped only into the shoes of the elected district attorney for the purposes of the case he was appointed to handle. He did not assume general management of the array of cases in that office. He was a one case prosecutor. While Lyford's authority over his one case was considerable, his charge was too limited to make him a policymaking authority for the county." *Id.* at 192; *see also Krueger v. Reimer*, 66 F.3d 75 (5th Cir. 1995) (a Texas district attorney acting as a prosecutor during a criminal proceeding is not acting as a County final policymaker); *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990) (a Texas district attorney acted as a State official when instituting proceedings to enforce state law); *Coates v. Brazoria County Tex.*, No. 3:10-CV-00071, 2012 U.S. Dist. LEXIS 175130 (S.D. Tex. Dec. 11, 2012) (the County District Attorney's decision not to prosecute a County Court-at-Law judge accused of sexual harassment was not made as the county's final policymaker); *Jones*, 2003 U.S. Dist. LEXIS 10859, at *6 (the district attorney was not acting as a final policymaker when deciding to prosecute the plaintiff for criminal assault rather than to dismiss the charges).

9

In *Esteves*, the Fifth Circuit found that a county could not be liable for a prosecutor's exercise of peremptory challenges during a criminal proceeding. "Given that a district attorney represents the state in criminal prosecutions, the county, which has no affirmative control over the prosecutor's decisions in a particular case, should not be held liable when a prosecutor engages in unconstitutional conduct during a criminal proceeding." 106 F.3d at 678. The Fifth Circuit did not hold that a county could never be liable for a district attorney's actions. "Our decision today does not absolve a county of all responsibility for the actions of a district attorney in the performance of his or her duties. For those duties that are administrative or managerial in nature, the county may be held liable for the actions of a district attorney who functions as a final policymaker for the county." *Id.* Those duties were at issue in *Crane*, 759 F.2d 412, in which the Fifth Circuit found that the Dallas County District Attorney's Office's policy of issuing misdemeanor arrest warrants without probable cause was within the District Attorney's policymaking capacity and justified imposing liability on the County. "[T]he record plainly show[ed] that the District Attorney was alone responsible for the County system and could change it at will." *Id.* at 429. "The County . . . acted through the District Attorney; he selected the means by which the County was to achieve a sound and legally sufficient capias system. His choice of an unsound and legally insufficient system represents County policy for which the County is liable." *Id.* at 430.

These cases do not, as Harris County suggests, draw the liability line between anything related to a County District Attorney prosecuting cases and performing "administrative tasks, such as providing offices and supplies." (Docket Entry No. 46 at 7). Brown's allegations are sufficient to form a plausible basis to state a claim for *Monell* liability against Harris County for policies, practices, and customs, not for actions taken only prosecuting a case.

10

### B. Rule 12(b)(1) and Standing

Harris County argues that Brown lacks standing to sue Harris County because he cannot show a causal connection between his injury and the alleged constitutional violations. Brown argues that this argument repackages the same arguments discussed above. The court agrees. Brown has shown standing to bring this suit.

Standing requires the plaintiff to show: (1) an injury-in-fact that is "an invasion of a legally protected interest which is (a) concrete and particularize and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct of the defendant; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Deutsch v. Annis Enters.*, 882 F.3d 169, 173 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Harris County challenges only the second prong of the standing test—whether Brown has shown a causal connection between his injury and the County's conduct. Harris County appears to argue that Brown cannot show causation because the County has no control over, and cannot be liable for the actions of, an elected district attorney, and therefore there is no causal link between the County's polices or customs and Brown's injury.

To satisfy causation, the injury must be "fairly traceable" to the defendant's conduct. *Texas v. United States*, 787 F.3d 733, 748 (5th Cir. 2015). "The Supreme Court has warned against 'wrongly equat[ing] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation.'" *Planned Parenthood of Gulf Coast, Inc. v. Gree*, 862 F.3d 445, 456 (5th Cir. 2017) (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)) (alterations in original). "Although injury resulting from 'the independent action of some third party not before the court' will not suffice, 'that does not exclude injury produced by determinative or

11

coercive effect upon the action of someone else.'" *Id.* (quoting *Bennett*, 520 U.S. at 169)).

As discussed in detail in the court's prior Memorandum and Order, a § 1983 municipal-liability claim requires the plaintiff to show that the allegedly unconstitutional policy was the "moving force" behind his injury. (Docket Entry No. 39 at 21–23). A "moving force" is equivalent to causation. *See, e.g.*, *James v. Harris Cty*, 577 F.3d 612, 617 (5th Cir. 2009). Brown alleges that Harris County's "do-whatever-it-takes" to convict policy or custom caused him to be wrongfully convicted and to spend 12 years on death row. The traceability requirement is satisfied. Harris County's challenge is based on failure to state a claim, not a lack of standing. *See, e.g.*, *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 U.S. Dist. LEXIS 110673, at *17–18 (N.D. Tex. May 25, 2017) ("When considered as a whole, Plaintiff's amended complaint in this case satisfies the constitutional standing requirements. . . . To the extent that there is any issue that the alleged injuries are fairly traceably to the City, such issue relates to whether Plaintiff has stated a claim for municipal liability, not whether Plaintiff has standing to sue the City."). Brown has stated a claim for which he has standing to sue.

**IV.     Conclusion**

Harris County's motion for reconsideration, (Docket Entry No. 46), is denied.

SIGNED on March 15, 2018, at Houston, Texas.

                                                    _____
                                                    Lee H. Rosenthal
                                                    Chief United States District Judge