Case 4:17-cv-01749   Document 149   Filed on 05/11/21 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
May 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFRED DEWAYNE BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1749 |
| | § | |
| CITY OF HOUSTON, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Alfred Brown spent almost ten years on death row after he was convicted in 2005 of murdering a police officer during a robbery. He maintained his innocence. After Brown's habeas challenge uncovered exculpatory evidence hidden in the garage of the investigating police officer, Brown's conviction was vacated, the state court granted the prosecutor's motion to dismiss the charges against Brown, and he left prison an innocent man.

Brown has sued the City of Houston; Breck McDaniel, a detective in the Houston Police Department's Homicide Division; and Ted Bloyd and Darrell Robertson, police officers in the Homicide Division, (the "City Defendants"),[1] under 42 U.S.C. § 1983, seeking compensation for the lost decade of his life. Brown also filed for compensation with the Texas Office of the Comptroller under the Tim Cole Act, TEX. CIV. PRAC. & REM. CODE § 103.001, *et seq*.[2] Brown eventually received almost $1 million under that Act.

The City Defendants have moved for summary judgment based on § 103.153(b), which prohibits a person who "receives compensation" under the Act from "bring[ing] any action

---

[1] Brown has also sued Harris County.
[2] The statute was enacted as the Texas Wrongful Imprisonment Act. In 2009, the Act was named for Tim Cole, who was exonerated by DNA evidence after dying in prison and who received Texas's first posthumous pardon. *In re Smith*, 333 S.W.3d 582, 584 n.1 (Tex. 2011).

involving the same subject matter" against "any governmental unit or . . . employee." (Docket Entry No. 141). Brown has responded, and the City Defendants have replied. (Docket Entry Nos. 142, 143).

The City Defendants' motion requires the court to decide whether § 103.153(b) bars a § 1983 lawsuit brought by an individual before he received compensation under the Tim Cole Act and, if so, whether that bar violates the Supremacy Clause. After a careful review of the motion, the response, and the applicable law, the court concludes that § 103.153(b) applies and does not violate the Supremacy Clause. The court grants the City Defendants' motion, (Docket Entry No. 141), and enters final judgment by separate order.[3]

The reasons are explained below.

## I. Background

The court's earlier opinion, *Brown v. City of Houston*, 297 F. Supp. 3d 748 (S.D. Tex. 2017), set out the factual background of Brown's arrest, incarceration, and release. The relevant facts presented here come from the complaint, documents in the public record, the summary judgment motion, and the response. (*See* Docket Entry Nos. 1, 141, 142, 143).[4]

In 2005, Brown was convicted in Texas state court for the homicide of Officer Charles Clark, which occurred during a robbery in South Houston in 2003. (Docket Entry No. 1 at ¶¶ 24, 32.). He was sentenced to death. (*Id.* at ¶ 24). In 2014, the Texas Court of Criminal Appeals vacated Brown's conviction and sentence and remanded the case for "a new trial or other

---

[3] Although Harris County is not included in the City Defendants' summary judgment motion, § 103.1539(b) also bars Brown's claims against Harris County, because Harris County is a "governmental unit" within the meaning of the statute. *See* TEX. CIV. PRAC. & REM. CODE § 103.153(a); TEX. CIV. PRAC. & REM. CODE § 101.001(defining "governmental unit" as including counties).
[4] The parties do not present any factual disputes at this procedural stage. (*See* Docket Entry No. 142 at 2–4 (summarizing the background of the case); Docket Entry No. 143 at 1 ("[T]his matter should be decided by summary judgment because the issue is a pure question of law.")).

proceeding." (*Id.* at ¶ 26). In 2015, the state district court granted the Harris County District Attorney's motion to dismiss the charges against Brown for insufficient evidence, and Brown was released from prison. (*Id.* at ¶¶ 140–41).

In 2016, Brown filed a petition with the Texas Office of the Comptroller for compensation under the Tim Cole Act, TEX. CIV. PRAC. & REM. CODE § 103.001, *et seq*. (Docket Entry No. 142-1 at ¶ 3). Under that Act, a person who was incarcerated under state law may receive lump-sum compensation and other benefits if that person: (a) "received a full pardon on the basis of innocence"; (b) was granted habeas corpus relief "based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced"; or (c) was granted habeas corpus relief and the state court dismissed the charge against the person "based on a motion to dismiss in which the state's attorney states that no credible evidence exists that inculpates the [person]" and "that the state's attorney believes that the [person] is actually innocent." TEX. CIV. PRAC. & REM. CODE § 103.001(a). The Office of the Comptroller denied Brown's petition because his habeas relief was not based on a finding that he was "actually innocent," he did not receive a pardon, and the state's attorney did not file a qualifying motion. (Docket Entry No. 142-1 at ¶ 4). Brown filed this lawsuit in June 2017, asserting claims under § 1983 for violations of his constitutional rights. (Docket Entry No. 1).

In May 2018, Harris County District Attorney Kim Ogg ordered an independent investigation into Brown's claim of actual innocence. This case was stayed pending that investigation. (Docket Entry No. 72). In March 2019, the investigation report concluded that "[b]y clear and convincing evidence, no reasonable juror would fail to have a reasonable doubt about whether Brown is guilty of murder." (Docket Entry No. 76-1 at 83). Based on the report, Harris County District Attorney Ogg filed in Texas state court an amended motion to dismiss the

3

charges against Brown, which the court granted.  (Docket Entry No. 76; Docket Entry No. 142 at 3–4).

In May 2019, Brown filed another petition for compensation with the Texas Office of the Comptroller, which was denied.  (Docket Entry No. 81-1).  In July 2019, this court lifted the stay.  (Docket Entry No. 87).  After the Office of the Comptroller again denied Brown's claim, he sought mandamus from the Texas Supreme Court.  (Docket Entry No. 141-1).  In December 2020, the Texas Supreme Court concluded that the State of Texas had to pay Brown under the Tim Cole Act.  *In re Brown*, 614 S.W.3d 712 (Tex. 2020).  The Comptroller complied, and Brown received $980,000.  (Docket Entry No. 141-2).

While Brown was pursuing compensation under the Tim Cole Act, this case continued.  The parties have made and argued multiple motions to dismiss, which the court has addressed at length.  (Docket Entry Nos. 39, 56, 117, 129).  After extensive discovery, the City Defendants filed this motion for summary judgment.

## II.     The Legal Standard for Summary Judgment

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quotation marks omitted); Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party."  *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020).  The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation and quotation marks omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (per curiam)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation and quotation marks omitted).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and quotation marks omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

**III.     Analysis**

Section 103.153(b) of the Tim Cole Act states that "[a] person who receives compensation under this chapter may not bring any action involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement, against any governmental unit or an employee of any governmental unit." TEX. CIV. PRAC. & REM. CODE § 103.153(b). The City Defendants argue that the statute bars Brown's lawsuit because he received compensation under the Tim Cole Act and his claims against them are based on the same subject matter as that compensation. Brown argues that § 103.153(b) does not bar his lawsuit because: (a) the statute applies to lawsuits filed after a person is compensated under the Tim Cole Act, not to lawsuits filed before a person is compensated; and (b) even if § 103.153(b) applies, it violates the Supremacy Clause and is preempted by § 1983. The court addresses each argument in turn.

**A.     Section 103.153(b) Applies**

Whether § 103.153(b) applies when, as here, a wrongfully convicted individual is exonerated after lengthy incarceration, files a lawsuit for § 1983 damages for that incarceration, also files and receives compensation under the Tim Cole Act, and then tries to continue his § 1983 lawsuit, is a novel issue of Texas law. To resolve the issue, the court must "look to the decisions of the state's highest courts." *In re Franchise Servs. Of N. Am., Inc.*, 891 F.3d 198, 209–10 (5th Cir. 2018), *as revised*, (June 14, 2018) (citing *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013)). "In the absence of a controlling decision," the court must "make an '*Erie [R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] guess' as to how the state's highest court would resolve the issue." *Id.* (quoting *Temple*, 720 F.3d at 307).

The Texas Supreme Court has considered the Tim Cole Act several times, but it has not addressed the specific issue presented here. *See, e.g.*, *In re Brown*, 614 S.W.3d 712 (Tex. 2020)

(determining the Comptroller's authority when making eligibility determinations); *In re Allen*, 366 S.W.3d 696 (Tex. 2012) (interpreting "actual innocence"); *In re Smith*, 333 S.W.3d 582 (Tex. 2011) (interpreting the Act's concurrent-sentence restriction); *State v. Oakley*, 227 S.W.3d 58 (Tex. 2007) (considering the assignability of claims and the issue of duplicative recovery under the Act).

Brown argues that because the Texas Supreme Court has not addressed the issue, the court must interpret "bring any action" in § 103.153(b) from scratch. The City Defendants respond that the Texas Supreme Court showed how it views the statute in its recent opinion in Brown's mandamus action:

> The administrative remedy under the Tim Cole Act works to the exclusion of any other action "involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement," and in doing so, the Legislature has spared governmental units, governmental employees, and the wrongfully imprisoned the uncertainty and expense of litigation.

*Brown*, 614 S.W.3d at 723 n.60 (quoting TEX. CIV. PRAC. & REM. CODE § 103.153(b)); (Docket Entry No. 143 at 8).

*State v. Oakley*, 227 S.W.3d 58 (Tex. 2007), is also instructive. In that case, the plaintiff sued the City of Austin for civil rights violations based on his wrongful imprisonment and received a settlement. *Id.* at 59–60. He then filed for compensation under the Tim Cole Act. The State of Texas filed a jurisdictional plea, arguing that § 103.153(b) precluded the plaintiff from recovering under the Act due to his settlement. *Id.* at 63. The Texas Supreme Court read § 103.153(b) as "plainly prohibit[ing] those who receive compensation from the State from then suing local government entities or employees." *Id.* The court concluded that the plaintiff's previous settlement did not bar his claim for compensation under the Tim Cole Act, explaining that:

> [Section 103.153(b)] explicitly makes sequence important. By limiting this provision to a person who "receives" compensation from the State, the Legislature barred other suits only

by those who have Chapter 103 funds in hand, not those who may be entitled to them in the future. Until receipt occurs, the plain language of the statute does not allow other government entities to use Chapter 103 as a defense. . . .

[T]he statute does not purport to bar duplicative recoveries; had that been the aim, legislators could have simply said that no one can recover both. Instead, the statute grants immunity to local government entities once the State has paid a Chapter 103 claim. So construed, the statute protects local entities from having to add to a settlement by the State, but does not protect the State from having to add to a settlement by local entities or employees.

*Id.* at 64.

Although *Oakley* is not directly on point, it provides guidance on how the Texas Supreme Court views the statute. "[O]nce the State has paid a Chapter 103 claim," § 103.153(b) "grants immunity to local government entities." *Id.* at 63. The court reiterated that interpretation in *Brown*. *See Brown*, 614 S.W.3d at 723 n.60 ("the Tim Cole Act works to the exclusion of any other action" (emphasis added)).

It is a minor extension of *Oakley* to read § 103.153(b) as barring Brown's lawsuit. The relevant facts are similar. The plaintiff in *Oakley* sued a city defendant before receiving compensation from the state under the Tim Cole Act. Brown did the same. The chief distinction is that the city defendant in *Oakley* settled before the plaintiff was compensated under the Act. Here, the City Defendants did not settle. Had the city defendant in *Oakley* not settled, that case would have raised the issue presented here. Nonetheless, *Oakley* makes clear how the Texas Supreme Court understands § 103.153(b). A state's payment for wrongful conviction under the Act provides immunity to suits against state and local governmental entities and employees seeking additional payment for the same wrongful conviction. The court concludes that, presented with the facts in this case, the Texas Supreme Court would likely apply *Oakley* and conclude that § 103.153(b) bars Brown's lawsuit.

8

Brown argues that "[a]s a policy matter," § 103.153(b) should not apply, because it will create "misaligned incentives, particularly for a district attorney's office sued under § 1983," because "if litigation looks promising for a plaintiff," the district attorney could "declare that [plaintiff] 'actually innocent' in an attempt to avoid liability through the exclusivity provision of the [Tim Cole] Act." (Docket Entry No. 142 at 14–15). There are two problems with that argument. First, a plaintiff in Brown's position is not required to pursue relief under the Tim Cole Act. The argument assumes that taking the statutory compensation in lieu of continuing the vagaries of a § 1983 lawsuit is always a bad decision. It may not be. For individuals, like Brown, who have lost much of their life wrongfully imprisoned, the benefit of getting earlier compensation in a specific amount may outweigh the chance of a larger recovery it if requires a trial and perhaps an appeal. *See Brown*, 614 S.W.3d at 723 n.60 ("The administrative remedy under the Tim Cole Act works to the exclusion of any other action involving the same subject matter,. . . and in doing so, the Legislature has spared . . . the wrongfully imprisoned the uncertainty and expense of litigation." (quotation marks omitted)). In any event, the decision between Tim Cole Act compensation and a civil action lies with the plaintiff.

The second problem with Brown's policy argument is that it would require rewriting the statute. Even if applying § 103.153(b) in this case creates "misaligned incentives," that issue is for the Texas Legislature to resolve.[5]

If an individual files a § 1983 lawsuit for wrongful conviction against Texas governmental units or employees, then receives Tim Cole Act compensation for the same wrongful conviction,

---

[5] Similarly, Brown's argument that the amount provided under the Tim Cole Act is insufficient to compensate him for his wrongful imprisonment, (Docket Entry No. 142 at 15–17), is an argument better made to the Texas Legislature, not this federal court.

§ 103.153(b) bars additional recovery through the lawsuit. Section 103.153(b) applies to bar Brown's § 1983 damages lawsuit.

**B.    Section 103.153(b) Does Not Violate the Supremacy Clause**

"The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute 'the supreme Law of the Land.'" *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (quoting Art. VI, cl. 2). If a federal law "confers rights on private actors and a state law . . . imposes restrictions that conflict with the federal law, the federal law takes precedence and the state law is preempted." *Id.* (cleaned up) (quoting *Murphy* v. *National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1480 (2018)).

Brown argues that § 1983 preempts § 103.153(b) because the statutes conflict. (Docket Entry No. 142 at 5–10); *see Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019) (a litigant must point specifically to "a constitutional text or a federal statute" that conflicts with state law). Conflict preemption applies "where compliance with both federal and state [law] is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citations and quotation marks omitted). "That type of pre-emption analysis is applicable only where the overlapping, dual jurisdiction of the Federal and State Governments makes it necessary to decide which law takes precedence." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1889 (2019). The "ordinary question" is "whether a conflict exists between [the] federal and state law." *Id.*

The City Defendants argue that the statutes do not conflict, because the state statute acts like an offer by the State of Texas to compensate wrongly incarcerated individuals in exchange for a waiver of their claims against other governmental entities and employees. The City Defendants

10

rely on *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 948 (6th Cir. 1987) (en banc).  In that case, the plaintiff, a former government employee, filed a lawsuit in federal court against her former employer, a state agency, and her former supervisors.  The plaintiff then filed an "essentially identical complaint" against the agency in the Ohio Court of Claims.  *Id.* at 951.  That court dismissed the case, and the plaintiff did not appeal.  *Id.*  The federal court then dismissed the federal case based on sovereign immunity, relying on a provision of the Ohio Court of Claims Act that read:

> [F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee.

*Id.* at 948 (quoting OHIO REVISED CODE § 2743.02(A)(1)).  The federal court concluded that, "by electing to sue the [agency] in the Ohio Court of Claims, the plaintiff voluntarily waived her cause of action against the individual defendants."  *Id.*  The plaintiff appealed, arguing that the state statue was inconsistent with § 1983 and, therefore, preempted under the Supremacy Clause.  *Id.* at 951.  A divided panel agreed and reversed, and the Sixth Circuit reheard the case en banc.  *Id.* at 948.

In affirming the district court, the en banc court concluded that the state statute "simply offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum, if prospective plaintiffs who think they have claims against individual state employees voluntarily elect to waive suit against the employees in favor of suit against the employer."  *Id.* at 953.  "In practical effect[,] the [statute] is a standing offer for a settlement of claims against state employees in exchange for an otherwise nonexistent opportunity to sue the state itself for damages."  *Id.*

The en banc court determined that the "constitutionality of such an offer can hardly be doubted," citing *Town of Newton v. Rumery*, 480 U.S. 386 (1987).  In that case, the Supreme Court

11

concluded that a plaintiff's voluntary acceptance of a city's offer to dismiss criminal charges in exchange for a waiver of claims against the city and its employees was constitutional. *Id.* at 954. Because the plaintiff in *Leaman* was represented by counsel, the en banc court concluded that her decision to "accept Ohio's statutory offer . . . in exchange for a waiver of claims against individual state officers" was voluntary. *Id.* at 956–57.

The City Defendants argue that *Leaman*'s reasoning applies in this case. Although *Leaman* remains good law, *see, e.g., Pool v. Burger*, No. 18-3114, 2019 WL 441500, at *1 (6th Cir. Jan. 10, 2019) (applying *Leaman*), no other circuit court has applied its reasoning or its conclusion that a state statute can bar § 1983 claims based on the voluntary settlement nature of the statute. *See United States v. Holland*, 519 F.3d 909, 914 n.5 (9th Cir. 2008) (citing *Leaman* for its discussion of judicial recusal); *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (same). No district court within the Fifth Circuit has applied *Leaman* to similar facts.[6]

The Sixth Circuit's en banc decision is helpful because the legal issues are similar to those presented here. In *Leaman*, the plaintiff chose to seek damages against a state, and the statute authorizing that lawsuit conditioned the plaintiff's recovery on the waiver of her claims against state officers and employees. In this case, Brown chose to seek and accept compensation from Texas under a statute that conditions compensation on the inability to seek compensation from other governmental entities and employees. Like the plaintiff in *Leaman*, Brown was not required to seek compensation from the State. Brown's choice to seek compensation under § 103.153(b) was independent of his choice to file or continue his federal lawsuit. And, like the plaintiff in

---

[6] The only district court case in the Fifth Circuit to cite *Leaman* is *Elizondo v. City of Garland*, No. 3:09-CV-1103-O, 2010 WL 11515270, at *3 (N.D. Tex. Oct. 7, 2010). In that case, the district court considered whether dismissal of claims against a police officer under the Texas Tort Claims Act required dismissal of related § 1983 claims. The court concluded that *Leaman* did not apply based on precedent interpreting the Act.

*Leaman*, Brown was represented by counsel in both this lawsuit and his pursuit of Tim Cole Act compensation. *Leaman* provides persuasive authority for concluding that § 103.153(b) applies to bar Brown's § 1983 claims without violating the Supremacy Clause.

The cases that Brown cites do not lead to a contrary conclusion. Brown mainly relies on cases in which the Supreme Court determined that state statutes violated the Supremacy Clause as applied to § 1983 claims. (Docket Entry No. 142 at 6–7); s*ee Haywood v. Drown*, 556 U.S. 729 (2009); *Felder v. Casey*, 487 U.S. 131 (1988); *Martinez v. State of Cal.*, 444 U.S. 277 (1980). But the state statutes in those cases differ from § 103.153(b) in a significant way: unlike § 103.153(b), the state statutes in *Haywood*, *Felder*, and *Martinez* directly limited the availability of § 1983 claims. In *Martinez*, the state statute immunized public entities and employees for injuries related to parole decisions, which impermissibly made § 1983 claims unavailable against a category of defendants and conduct otherwise within the reach of § 1983. 444 U.S. at 284 n.8 (conduct "which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." (quotation marks omitted)). In *Felder*, the state statute required plaintiffs to comply with a short notice period for § 1983 claims, which was unconstitutional because the state statute "conflict[ed] in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in [state-court] actions [would] frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court." 487 U.S. at 138. In *Haywood*, the state statute divested state trial courts of jurisdiction over § 1983 claims against state correctional officers, which was unconstitutional because it was "effectively an immunity statute cloaked in jurisdictional garb." 556 U.S. at 742.

The statutes in *Haywood*, *Felder*, and *Martinez* restricted the availability of § 1983 claims for all claimants. The plaintiffs in *Martinez* and *Haywood* could not bring their § 1983 claims at

13

all, and the plaintiff in *Felder* could bring § 1983 claims only after complying with a state-specific notice requirement. Section 103.153(b) imposes no similar restrictions. Rather, § 103.153(b) bars claims, including § 1983 claims, on a case-by-case basis and only after the plaintiff voluntarily seeks and receives compensation under the Tim Cole Act. Had Brown elected not to receive compensation under the Tim Cole Act, § 103.153(b) would not apply and he could pursue his § 1983 claims. Section 103.153(b) presented no barrier to Brown's § 1983 claims until he voluntarily accepted funds under the Tim Cole Act. *Haywood*, *Felder*, and *Martinez* do not support the conclusion that § 103.153(b) conflicts with § 1983 and violates the Supremacy Clause.

Brown also cites *Golden v. Austin Cty. Sheriff's Dep't*, No. CIV.A.H-09-817, 2009 WL 1835448 (S.D. Tex. June 26, 2009). In that case, this court concluded that the election-of-remedies provision in the Texas Tort Claims Act did not bar the plaintiffs' related § 1983 claims. *Id.* at *5. Brown emphasizes that the election-of-remedies provision in that Act is more stringent than § 103.153(b).[7] Because the bar in the Texas Tort Claims Act is more stringent than the bar in the Tim Cole Act, Brown argues that *Golden* supports the conclusion that § 103.153(b) cannot constitutionally bar § 1983 claims.

The court in *Golden* explained that the election-of-remedies provision of the Texas Tort Claims Act barred only claims filed "under" that Act. *Id.* Because § 1983 claims are not filed under that Act, its election-of-remedies provision did not apply. *Id.* Section 103.153(b) does not

---

[7] *Compare* TEX. CIV. PRAC. & REM. CODE § 101.106 (a) ("The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."), *with* TEX. CIV. PRAC. & REM. CODE § 103.153(b) ("A person who receives compensation under this chapter may not bring any action involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement, against any governmental unit or an employee of any governmental unit.").

14

have a similar exception. "[A]ny action involving the same subject matter" for which a person received Tim Cole Act compensation is barred. The reasoning in *Golden* does not apply.[8]

The cases that Brown cites do not support the conclusion that § 103.153(b) of the Tim Cole Act conflicts with § 1983 and violates the Supremacy Clause. The Sixth Circuit's en banc decision in *Leaman* involved a state statute similar to § 103.153(b) that barred § 1983 claims without violating the Supremacy Clause. Although § 1983 will preempt a state statute that generally prohibits or restricts § 1983 claims, a plaintiff like Brown may waive § 1983 claims as part of a settlement. *Haywood*, 556 U.S. 729; *Felder*, 487 U.S. 131; *Rumery*, 480 U.S. 386; *Martinez*, 444 U.S. 277. The conclusion that § 103.153(b) bars Brown's § 1983 claims without violating the Supremacy Clause fits neatly within that jurisprudence.

Like the statute in *Leaman*, § 103.153(b) acts as a standing offer from the State of Texas to wrongly incarcerated individuals, offering compensation in exchange for a waiver of claims against other governmental entities and employees. People who were wrongly incarcerated may disregard that offer and instead pursue claims, including § 1983 claims, against those entities or employees without any additional barrier or restriction. Only by accepting the State's offer does an individual surrender those claims. For over 30 years, *Leaman* has stated that such a statute does not violate the Supremacy Clause. The court sees no reason to reach a different conclusion for § 103.153(b). The Tim Cole Act bars lawsuits filed before an individual receives compensation under that Act, and that bar does not violate the Supremacy Clause.

---

[8] Brown also relies on *Rogers v. Bagley*, in which the Texas Court of Appeals concluded that § 1983 preempted the expert-report requirement of the Texas Medical Liability Act, but the Texas Supreme Court recently reversed on that issue. *See Rogers v. Bagley,* 581 S.W.3d 362 (Tex. App.—Corpus Christi-Edinburg, 2019), *rev'd,* No. 19-0634, --- S.W.3d ---, 2021 WL 1432231 (Tex. Apr. 16, 2021).

## IV.     Conclusion

The City Defendants' motion for summary judgment, (Docket Entry No. 141) is granted. Final judgment is entered by separate order.

SIGNED on May 11, 2021, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge